THE SWIFT ELECTRIC LIGHT COMPANY v. WILLIAM GRANT.

*Negligence—Admission of liability—Evidence—Credibility of witness—Impeachment.*

.1. In a suit to recover for the alleged careless breaking of a wheel, the plaintiff's superintendent testified that defendant admitted soon after the accident that it was caused by his

negligence, and that he promised to be responsible for the loss, which defendant denied, but admitted saying that he supposed he would have to pay for the wheel, but had advised with no one on the subject. Defendant was permitted to testify further that a few days after this conversation he told the superintendent that he had looked the matter up and found that he was not liable, and that he would not pay for the wheel. And it is held that the latter testimony was competent, as was the question, asked the superintendent on his cross-examination, whether defendant did not so deny his liability and refuse to make such payment; and that, as the superintendent was acting for the plaintiff, defendant was entitled to all that was said between the superintendent and himself up to and including the time when all talk of defendant's liability ceased between them.

2. The court correctly instructed the jury that, if the defendant was not legally liable by reason of his negligence, his admission, if made, would not create such liability, but that such admission, made when the facts were fresh and open to observation, and made against defendant's interest, was evidence to which the jury should give such weight as, in their judgment, it was entitled to, as an admission of the fact of defendant's carelessness, and that defendant's subsequent denial of liability would not tend to lessen the force of such admission of fact as evidence of how he then considered the work had been done.

3. Testimony which touches the bias or interest of a witness is always admissible, and can be shown on his cross-examination, and, if denied by him, can be proven on rebuttal, if the proper foundation is laid for such proof; citing *Geary v. People,* 22 Mich. 220.

Error to Saginaw. (Edget, J.) Submitted on briefs February 18, 1892. Decided March 4, 1892.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Wisner & Draper,* for appellant, contended:

1. The admission of defendant's testimony as to the conversation in front of the Bancroft House was a violation of the rule of law forbidding a party from making testimony for himself by showing his statements in his own favor, not a part of the *res gestæ,* and not a part of the conversation in which he

made admissions against his own interests; citing *Lewis v. Rice*, 61 Mich. 103; *Vanneter v. Crossman*, 42 Id. 468; *Downs v. Railroad Co.*, 47 N. Y. 83.

2. The attempted impeachment of the witness Brown upon a collateral and immaterial matter was improperly allowed; citing *Dunn v. Dunn*, 11 Mich. 284; *Fisher v. Hood*, 14 Id. 189; *Leavitt v. Stansell*, 44 Id. 424; *McDonald v. McDonald*, 67 Id. 122.

*Tarsney & Weadock* (*Hanchett, Stark & Hanchett,* of counsel), for defendant.

MORSE, C. J. Plaintiff employed defendant to move a heavy wheel, weighing about 20 tons, into its works, and lower the same into a pit prepared for its reception. In performing the work of lowering, the tackle gave way, and one section of the wheel was broken. The wheel was shipped in two sections or halves. Plaintiff sued for its value, alleging that the defendant failed to use reasonable care and skill and proper appliances for doing the work, which failure was the cause of the accident. Defendant had verdict and judgment.

The first assignment of error relates to the admission of evidence. Mr. Brintnall, plaintiff's superintendent, testified:

"I saw Mr. Grant, the defendant, the next morning after the wheel broke. He told me it was his fault; his carelessness in attempting to put it in with blocks that were not sufficiently strong; that he should have known better than to have attempted it; and told me to order a new wheel or a new half wheel, or wire the parties from whom we bought this wheel, as he didn't know them. He says to me: 'Wire the parties in Milwaukee, and ask them if they can't make a new half wheel to fit the unbroken half.' He said, 'you do that at my expense;' and he said, 'I will hold you harmless of any expense for the new wheel, because it was my carelessness, and I should have known better.' I did wire the parties at Milwaukee."

And further, on cross-examination:

"Mr. Grant told me the next day that it was his carelessness, and to wire and get a new wheel; told me down at the works first, our electric light works, at the place where the wheel broke. I had two conversations in all,— one later. This was the next morning. I afterwards saw him at my office. The wheel broke in the evening about six o'clock, and this was the next morning that I saw him, for the first time after the wheel broke. He said it was his own carelessness, and it would teach him a lesson, and that he wished I would communicate with E. P. Allis & Co., the parties who made the wheel in Milwaukee, by wire, at his expense (he said he didn't know these parties), and see if a new wheel could be made,—if so, how soon, and, if not, to order a whole new wheel; that he would hold us harmless for all cost for a new wheel; that it was his own fault and own carelessness in breaking the wheel. I saw him at the office the next day after this conversation took place at the works. I sent for him to come to the office. When he got there, I had a paper prepared for him to sign, in which he was to agree to pay for the wheel. I asked him to sign it, and he refused. He did not tell me that he didn't know whether he was liable or not, but, if he was liable, his word was as good as the paper; but he refused to sign the paper."

Defendant's counsel then undertook to show by Brintnall that, three or four days after this last conversation, he saw defendant in front of the Bancroft House, in Saginaw, and that defendant then told him that he was not liable, and would not pay for the wheel. The proposed evidence of this conversation was excluded by the court.

When the defendant gave his testimony, he denied saying to Brintnall that it was his fault, or that he was careless. He says:

"I saw Mr. Brintnall at the works the next morning. He came to me, and asked what I was going to do about it, and I told him I didn't know; I suppose I would have to pay for it. I had not advised with any one in any way as to whether I was liable. The next that occurred was, Mr. Nevins came from the office, and

told me that Brintnall wanted to see me at the office. On the way down to Mr. Brintnall's office, I did not have any talk with Nevins about it, that I can remember. When I got down to Mr. Brintnall's office, Mr. Brintnall said, 'I want you to sign that paper.' Then I commenced to think what I was going to do. I said: 'No, I don't think I want to sign that. I will have to think it over.' Said he, 'Why don't you want to sign it?' I said: 'My word is as good as my note; and if I say I will pay for it, if l am liable in the case, I will pay for it, without signing the paper.' I said: 'No; I will think this thing over before signing it.' He wanted to know if I would order a new wheel. I said: 'You have got to have a new wheel anyhow; and it is no use to wait any longer for it, but you better telegraph for one, and order one.'"

During the examination of defendant, the following proceedings were had:

"Q. When did you next see him,—Brintnall?

"A. Very soon after; within a day or two. I met Mr. Brintnall near the Bancroft House.

"Plaintiff's Counsel: I would like to inquire now if counsel is referring to the conversation near the Bancroft House, to which he called Brintnall's attention?

"Defendant's Counsel: Yes, that is the conversation.

"Plaintiff's Counsel: I object to the witness testifying to it.

"By the Court: I think the testimony of this witness has rendered it competent. I didn't think it was competent when first offered. I think he may give a narrative of everything down to the point where he denied liability, and made it necessary to bring suit. (To which ruling plaintiff duly excepted, and the witness testified:)

"A. Mr. Brintnall asked me what I was going to do about the wheel, and I told him I was not going to pay for it; that I had looked the matter up, and found I was not liable, and that I would not pay for it; and he said, 'We will make you pay for it;' and I said, 'All right. Go ahead.'"

We think the evidence was properly received, under defendant's theory of the talks he had with Brintnall; and we further think that the question excluded upon :

the cross-examination of Brintnall was proper. Mr.
Brintnall was acting for plaintiff, and defendant was en-
titled to all that was said between him and defendant
up to and including the time when all talk of defend-
ant's liability ceased between them.

Fault is also found with the charge of the court in
this connection. The court said:

"It is contended upon the part of the plaintiff that
the defendant, at the very time when this accident oc-
curred,—when the wheel was precipitated into the pit,
and broken in pieces,—stated that it was due to his own
carelessness, and that he would have to pay for it, or
expected to pay for it. If at that time the defendant
had not been guilty of such a degree of negligence upon
his part as to render him liable for that accident, under
the rules of the law as I define them, then the statement
upon his part that he was liable would not, in and of
itself, create any liability. His liability is not depend-
ent upon the state of facts upon which due care or want
of care is predicated. At the same time, an admission of
fact made under such circumstances, at the very time
of the happening of the accident, when all the facts are
fresh and open to observation, and made by a man who
had engaged in this work, and made against his own
interest, is evidence to which you will give such weight,
as an admission of the fact of carelessness, as, in your
judgment, it may be entitled to. The fact that some
days afterwards, after he had taken counsel in respect
to his legal liability, he denied liability, would not tend
to lessen the force of the admissions of fact that he
made at the time as evidence of how he then considered
the work had been done. The theory of the defendant
is that he did not admit at the time, or state, that it
was due to his carelessness, but that he did state at the
time that, if he was liable, he would pay for the wheel.
The form in which he makes this statement is condi-
tional. If he were liable, then he would answer for the
damages, but if it should turn out, in view of all facts
and the law of the case, that he was not so liable, then
he made no promise to pay; and, in view of the form
in which he claims he made the statement, it is not
evidence against him, to any extent, in the absence of

some other proof of a distinct liability for his negligence."

These instructions were correct.

Complaint is also made that the specific requests of the plaintiff were not given, although they plainly stated the law of the case as applied to the facts as claimed. Some of the requests were not proper, in the exact language as presented; and as to the others the court plainly and fully stated the law applicable to the facts as claimed by each party, and no error was committed in the instructions. We have seldom read a clearer or fairer exposition of the law in any case than was given in this.

Error is also assigned that the court allowed the defendant to impeach the witness Brown upon a collateral and immaterial matter. The impeaching question went to the interest or bias of the witness. Brown, who was sworn on behalf of the plaintiff, was asked if, some two months before the trial, when the defendant asked him if he knew anything new in the case, he did not say, "No, I am working for the electric light company now." Brown answered that he did not remember saying so, but he might have said it. Brown had given testimony tending to show that he called the attention of defendant to the fact that the appliances that he was using in lowering the wheel were not working properly. When defendant was on the stand, he denied the truth of Brown's testimony, and also testified that Brown told him, in substance, as stated in the question above. Testimony of this kind, which touches the bias or interest of the witness, is always admissible, and can be shown upon his cross-examination, and, if denied by him, can be proven on rebuttal; the proper foundation being laid for such proof. *Geary v. People*, 22 Mich. 220.

Judgment is affirmed, with costs.

The other Justices concurred.