## THE PEOPLE v. ARTHUR DUNCAN.

*Rape—Evidence.*

1. Respondent was informed against for rape committed upon a girl under the age of 14 years. The girl was permitted to testify to a conversation, had five months after the commission of the offense, with a woman with whom the girl was then living, in which she charged the respondent as the guilty party. And it is held that the case does not fall within the exception recognized in *People v. Hicks,* 98 Mich. 89, it not appearing that the girl's silence was induced by the threats of the respondent, and that the testimony was inadmissible.

2. A witness for the prosecution, after testifying that about a year before the commission of the offense, while the girl was at her house, she noticed respondent taking hold of her arm and pulling her around, added that her husband spoke of it at the time. In his closing argument the prosecuting attorney

referred to the testimony as showing that respondent made improper overtures to the girl, and used it as a basis of a claim that the parties were guilty of undue intimacy. And it is held that the motion of the respondent to strike out the testimony should have been granted, and that the testimony was made harmful in the extreme to the respondent by the argument of the prosecuting attorney.

3. The girl testified that she had never had intercourse with any man before; that it did not hurt her at all; that no blood followed, and that she was not lame or sore the next day. The respondent sought to show by a physician, in contradiction of said testimony, that the natural result of such intercourse would be a flow of blood, and soreness and lameness. And it is held that the court erred in excluding the testimony.

4. After the court had charged the jury, a juror stated that he understood the court to say, on excluding the testimony of the physician, that whether or not there was blood or soreness made no difference in regard to the case. The court replied that it was a question for the jury, under all of the circumstances; that the court could not enlighten the juror about it; that there was no evidence on the subject, except that of the girl. The juror replied that he thought he heard the court give his decision in regard to the matter. The court replied that he did not recollect saying anything in particular about the question; that the evidence was offered, and referred to something about blood and soreness, but there was no evidence introduced on the subject, except that of the girl. In answer to an inquiry by respondent's counsel whether the court meant that the jury were obliged to accept a statement that was unreasonable, although sworn to, the court stated that the jury had a right, under all of the circumstances of the case, to render their verdict; that they must put their own construction upon the whole evidence. And it is held that the juror was left to understand that it was immaterial whether or not the fact sought to be shown could be proved, as it would, if shown to exist, have no weight in the case; that he returned to the jury room with the view that, inasmuch as the girl had sworn to the intercourse, that ended the question; and that the court was in error in this treatment of the question.

5. The girl was permitted to testify that the child born to her as the fruit of the intercourse had been taken away from her. And it is held that what became of the child, unless the respondent was in some manner connected with taking it away, which was not claimed, was of no importance, and the testimony should have been excluded.

Exceptions before judgment from Allegan. (Padgham, J.) Argued March 1, 1895. Decided March 19, 1895.

Respondent was convicted of the crime of rape. Conviction reversed, and new trial granted. The facts are stated in the opinion.

*Charles R. Wilkes* and *Hannibal Hart,* for respondent.

*Fred A. Maynard,* Attorney General, and *F. E. Fish,* Prosecuting Attorney, for the people.

LONG, J. Respondent was convicted of rape upon one Phoebe W. Caruthers, a female child under the age of 14 years. The evidence of the girl tended to show that in March, 1893, the respondent came after her to go to his father's to work; that she went there, and worked until some time in November following; that at that time the family consisted of respondent's father and mother, his wife, and three children, and, part of the time, the hired man, one Burns Coats; that she became acquainted with respondent at the home of Mr. Blossom, a few months before she went to work for Mr. Duncan; that in August, 1893, respondent's wife took her youngest child, and went away on a visit, and did not return until after the alleged offense had been committed; that the family occupied the upper part of the house for sleeping; that the girl's room was so situated that she was compelled to pass through the room occupied by respondent; and she testifies that about August 20, in the morning, in passing through his room, he threw her upon the bed, and there had intercourse with her; that in November she left there, and went to live with a Mrs. Dan. A child was born to her on June 20, 1894, at Mrs. Dan's house. The respondent denies that he ever had intercourse with her. The people introduced evidence tending to show acts of intimacy between

the parties prior to that time. The extent of these acts is that respondent "fooled around her," as some of the witnesses state, and others, that he was seen to take her by the arms. All these acts were apparently innocent in themselves, so that the whole case hinged upon the testimony of the girl alone. She was contradicted by the mother of respondent in many particulars about the time when she arose that morning, and as to the whereabouts of the respondent at that time.

To sustain the girl's statement, the people were permitted to show what she stated to Mrs. Dan along in January following the time of the alleged offense, as well as what Mrs. Dan said to her. The girl testified, as to the reason she had not made the communication before, that the respondent said to her at the time of the intercourse:

"It would be worse for me than for him if I did tell, and I better keep still, and because I was afraid of him."

This was the sole ground upon which the girl was permitted to state what was said between herself and Mrs. Dan. She stated:

"Mrs. Dan said I had either got a bad cold, or something else was the matter, and she asked if anybody had ever been fooling around me, and I told her nobody, only Arthur Duncan; and she said, 'You must not lay it to him if it is not him;' and she said, 'Just tell who it is;' and I said it was nobody but him."

It appears that, at the time the girl was at respondent's father's, a son of Mrs. Dan, by the name of Burns Coats, also worked there, and slept upstairs. Coats had on several occasions gone home with her from Mrs. Dan's house.

It is contended by counsel for respondent that this testimony as to conversations between the girl and Mrs. Dan was incompetent and prejudicial to respondent, because—

1. There was no evidence showing that complainant had any reason to refrain from telling because of any threats respondent had made.

2. The girl was more than 14 years old at the time she made the statement to Mrs. Dan.

The rule is stated by Prof. Greenleaf as follows:

"Though the prosecutrix may be asked whether she made complaint of the injury, and when and to whom, and the person to whom she complained is usually called to prove ·that fact, yet the particular facts which she stated are not admissible in evidence, except when elicited in cross-examination, or by way of confirming her testimony after it has been impeached. On the direct examination, the practice has been merely to ask whether she made complaint that such an outrage had been perpetrated upon her, and to receive only a simple yes or no. Indeed, the complaint constitutes no part of the *res gestae;* it is only a fact corroborative of the testimony of the complainant, and where she is not a witness in the case it is wholly inadmissible." 3 Greenl. Ev. § 213.

In *People v. Gage,* 62 Mich. 271, and *People v. Glover,* 71 Id. 303, testimony of a third party was admitted, not as a part of the *res gestae,* but in each case it was placed upon the ground that the girl was of tender age (10 or 11 years old), and it appeared that from fear each ·had been prevented from telling sooner. In *People v. Hicks,* 98 Mich. 89, in speaking of the rule and what had been held in other cases, it was said:

"But exceptional cases have arisen, when rape was charged, where third parties have been allowed to detail conversations with the prosecutrix. In *People v. Gage,* 62 Mich. 271, this was allowed. It was not permitted upon the ground that the complaint of the prosecutrix was a part of the *res gestae,* but as corroborative of her testimony, and for the reason that the party outraged was of tender years, and that her silence for a length of time was the direct consequence of fears of chastisement, induced by threats of the perpetrator of the wrong. This case goes to the extreme of the rule, and borders closely upon dangerous ground."

In the present case it is clear that no such threats were made, and the girl was nearly 14 years of age when the crime is alleged to have been committed. Mrs. Dan cer-

tainly would not have been a competent witness to detail what was said between the prosecutrix and herself, and to state what the prosecutrix said at that time, five or six months afterwards, nor to state that the prosecutrix claimed that the respondent was the one who got her into the trouble. The testimony of the prosecutrix detailing conversations with Mrs. Dan, if admissible at all, was admissible as corroborative of the fact of the intercourse in August preceding. It could not be received for that or any other purpose. Whatever the girl said to others and what third parties said to her would in no sense tend to corroborate her statement of the offense having been committed, and especially as to the person who committed it. Such testimony, admitted by the court, would naturally be received by the jury as corroborative of the main fact in the case.

The prosecution called Mrs. Blossom as a witness. She testified that, while the girl was at her house, the respondent worked there several days; that this was before she went to live at respondent's father's; that, while there, she noticed the respondent taking hold of the girl's arm, and pulling her around, and she added: "I know my husband remarked about it at the time." Counsel moved to strike this out, and the motion was denied. The prosecuting attorney, in his final argument to the jury, remarked upon this testimony by saying:

"While she is at Blossom's, he makes improper overtures towards her, and takes hold of her so that it attracts the attention of Mr. and Mrs. Blossom, and Mrs. Blossom speaks of the matter to her husband. There is the commencement, the conception, of the crime which we claim has been committed in this case."

The answer of Mrs. Blossom should have been stricken out as requested. The acts of the respondent there seem to have been tortured by the prosecution into improper

104 MICH.—30.

overtures, while, in fact, his conduct bears no such construction, and what the husband of Mrs. Blossom said about it was hearsay, and had no place in the case. But, being in, the prosecution took advantage of it in the argument as the basis of some undue intimacy. It was thus made harmful in the extreme to the respondent.

The girl testified that she had never had intercourse with any man before, and that it did not hurt her at all, and that no blood followed the intercourse, and that she was not lame or sore the next day. The defense sought to show by Dr. Mitchell that the natural result from the intercourse with a young girl of that age would be pain, soreness, and blood following it. This was excluded. When the question was asked, the court said: "What has that got to do with this case?" Counsel replied: "It directly contradicts the girl as to what the effect was upon herself at this time." After the charge was given, one of the jurors asked:

"May I ask a question in regard to this case before we go out?

"*The Court:* Anything you don't understand?

"*Juror:* Well, it was something that was argued here yesterday that I heard you talk. I thought maybe I misunderstood you, when you were talking about no blood and no soreness. I understood you to tell them that would not make any difference in regard to this case.

"*The Court:* Well, of course, that is a question for you, under all the circumstances. I cannot enlighten you about it. There is no evidence in this case, as I understand it, except that of the girl about blood or soreness. I do not understand that there is any only hers. There is no other evidence.

"*Juror:* I thought I heard you give your decision yesterday.

"*The Court:* What is that?

"*Juror:* I understood you yesterday to give a decision in regard to that.

"*The Court:* Well, I don't recollect now that I said anything particular about that. That evidence was offered

here, and refers to something about that, but there was no other evidence introduced; that is all.

" *Counsel:* Your honor does not mean that they are obliged to accept a statement that is unreasonable, although sworn to?

" *The Court:* The jury have a right, under all the circumstances of the case, to render their verdict. They must put their own construction on the evidence, and the whole of it; there cannot anybody else for them."

The defense had the right to contradict the girl upon every material point by any competent evidence. She had testified to penetration by the respondent, and, as the result, the birth of a child some 10 months after the act of intercourse. She had testified that no one had ever had intercourse with her before that time, and that no blood followed, and that she was not lame or sore. If it be a fact that the natural result of such first intercourse with a girl of her age would be a flow of blood and soreness and lameness, the respondent had the right to show it; and the testimony was offered for the purpose of showing the fact. It was competent for that purpose. But the juror understood that that fact in the case would make no difference; that it was immaterial whether the fact could be proved or not, as it would have no weight if the fact existed; and he appeared to be puzzled as to just what the court meant. The court did not enlighten him, and he returned to the jury room apparently with the view that, inasmuch as the girl had sworn to the intercourse, that ended the question. When the court's attention was called to the situation by counsel's asking if the jury were obliged to accept a statement that was unreasonable, although sworn to, the court responded: "They have the right, under all the circumstances, to render their verdict." The court was in error in this treatment of the question.

The girl was asked on the trial what had become of the child, and was permitted to answer that it had been taken

away from her. No claim was made that the respondent was instrumental in taking it away. What had become of the child was of no importance, unless the respondent was in some manner connected with it, and the testimony should not have been permitted.

For the errors pointed out, the verdict must be set aside, and a new trial granted.

McGRATH, C. J., MONTGOMERY and HOOKER, JJ., concurred. GRANT, J., did not sit.