PEOPLE *v.* ROW.

| 135 | 505 |
| 157 | 6 92 |

1. CRIMINAL LAW—COMPLAINT—EVIDENCE.

   Where, on the trial of a criminal case not· cognizable by a jus-
   tice of the peace, it appeared that, before the warrant was
   issued, a witness was examined orally before the justice, an
   objection to the reception of any evidence was properly
   overruled, although the written complaint was made on in-
   formation and belief.

2. SAME—RAPE.

   On the trial of a respondent charged with rape on his 12-year-old
   daughter, it was error to admit testimony of the complaining
   witness in which he referred to information obtained from
   the daughter which satisfied him of the guilt of respondent,
   and influenced him to make the complaint.

3. SAME.

   It was error to permit a witness to testify to and narrate in
   detail a conversation had with the daughter in relation to the
   transaction three months after its occurrence.

4. SAME—STATEMENTS OF THIRD PERSON—CONSPIRACY.

   It was proper to reject the statements of a third person, not a
   witness, in favor of making the complaint against respond-
   ent, in the absence of any conspiracy shown to exist between
   him and the other witnesses to make the evidence competent.

5. SAME—WITNESSES—IMPEACHMENT—COLLATERAL MATTER.

   It was claimed by respondent on the trial that it was physically
   impossible for him to commit the offense at the time charged;
   that he had paralysis, and was under treatment for paralysis
   by a physician, who informed him that he had that disease.
   The physician testified that he treated respondent for rheu-
   matism, and not for paralysis, and denied having made state-
   ments to several persons that respondent had paralysis. *Held,*
   that evidence that the physician had made such statements
   was admissible for the purpose of impeachment, as against an
   objection that the inquiry related to a collateral matter.

6. SAME—BIAS.

   Evidence that the witness had attempted to persuade persons
   not to go upon the bond of respondent was admissible for the
   same purpose, as showing his interest or bias.

7. SAME — PHYSICAL CAPACITY—BURDEN OF PROOF — PRESUMPTION.

> It was proper to refuse to charge that the burden of proving the physical capacity of respondent was upon the people, since such capacity is presumed.

8. SAME — STATEMENTS OF WIFE — IMPEACHING TESTIMONY — INSTRUCTIONS.

> Respondent's wife having testified in his behalf, and evidence having been introduced on the part of the prosecution of statements made by her in respondent's absence, which she had denied, showing her knowledge of her husband's intimacy with the daughter, it was error to refuse to charge that such evidence was admissible solely for its bearing upon the wife's credibility as a witness.

Exceptions before judgment from Oceana; Russell, J. Submitted November 19, 1903. (Docket No. 232.) Decided January 26, 1904.

Isaiah Row was convicted of statutory rape. Reversed.

*F. E. Wetmore,* for appellant.

*Charles A. Blair,* Attorney General, and *Wallace Foote,* Prosecuting Attorney, for the people.

MOORE, C. J. The respondent was convicted of the statutory offense of rape upon his 12-year-old daughter. He has brought the case here on exceptions before sentence.

Respondent objected to any witnesses being sworn, for the reason that the complaint before the justice was made upon information and belief, and a warrant based thereon was not a valid one. This objection was not made in the justice's court, and an examination was had there. It also appeared at the trial in the circuit court that, before the warrant was issued, the daughter of the respondent was examined orally. We do not think the court erred in receiving this testimony. See *People* v. *Rush,* 113 Mich. 539 (71 N. W. 863), and the cases there cited.

Error is assigned because of what occurred between the

trial judge and the witness during the examination of the complaining witness, Rosenburger, which was as follows:

" *The Court:* When you say you became satisfied that there was something in it, what do you mean by that?

"*A.* Well, I became satisfied that she told me the truth about this case. She told what her father had done.·

" *Q.* Do you mean that you became satisfied that she had been raped?

"*A.* Yes, sir.

" *Q.* And it was probable that the old gentleman was guilty? Is that what you mean, or what do you mean?

"*A.* Yes, sir; I mean that. I was not willing to take hold of it, or make any move, until I was satisfied.

" *Mr. Wetmore:* I desire an exception on the record to the questions of the court.

. " *The Court:* You have a right to do that."

It is likely this colloquy would not have occurred had it not been for the questions previously put to the witness by the prosecuting attorney, and his answers thereto, which were not objected to by the attorney for the respondent. This, however, did not make the ·testimony competent, and, when the attention of the court was called to it, he should have so held, and instructed the jury accordingly.

Mrs. Baxter, a half-sister, was allowed to testify to a conversation with the girl three months after it was claimed the offense was committed, and this is said to be error. Justice LONG, in *People* v. *Duncan,* 104 Mich. 464 (62 N. W. 556), collates the law applicable to such a case. It was competent to show by Mrs. Baxter the girl had complained of the outrage to her, but it was not competent for her to narrate in detail a long conversation she had with her in relation to the transaction.

Complaint is made that the respondent was not allowed to show statements made by one Ikey Young to the effect that the complaint should be made, the respondent got rid of, and Young get the farm upon which respondent was living. Mr. Young was not a witness, and we think no such conspiracy was shown to exist between him and the other witnesses as to make the evidence competent.

The respondent claimed that, at the time he was said to have committed the offense, it was physically impossible for him to do so; that he was under treatment by one Dr. Munger, who treated him for paralysis, and that he had paralysis, and that the doctor told him he had paralysis. The doctor was called, and testified, apparently without objection, that he treated respondent for rheumatism, and not for paralysis, and that he did not have paralysis. He was asked if he had not told several persons (their names, the times and places being called to his attention) that respondent had paralysis, and he denied he had so told them. For the purpose of impeaching the doctor, these persons were called, but, as the judge thought the inquiry related to a collateral matter, they were not allowed to testify. We think the testimony should have been admitted. *People* v. *De France*, 104 Mich. 563 (62 N. W. 709, 28 L. R. A. 139); *Strudgeon* v. *Village of Sand Beach*, 107 Mich. 496 (65 N. W. 616). What we have said about this offer to impeach the witness in this respect also applies to the offer to show that the witness had attempted to persuade persons not to go upon the bond of the respondent, as showing his interest or bias. *Geary* v. *People*, 22 Mich. 220; *Beebe* v. *Knapp*, 28 Mich. 53; *Swift Electric-Light Co.* v. *Grant*, 90 Mich. 469 (51 N. W. 539).

Mrs. Row was a witness on behalf of her husband. After laying the proper foundation, and for the purpose of impeaching her, the people called as a witness James Mc-Vean, a deputy sheriff, who testified that Mrs. Row told him at the time he arrested Mr. Row (but not in the presence of Mr. Row) " that, if Mr. Row knew what she was going to swear to, she couldn't live there," and that he asked her if she was willing for this intimacy between the girl and her husband to go on, and that she said no, and that she told him she had spoken to Mr. Row about it, and he had promised that he would stop it, and that she did not think he had monkeyed with Emma since that time. Other witnesses were called, who gave similar testimony. When the judge had nearly completed his charge, the following occurred:

"*Mr. Wetmore:* With regard to the talks with Mrs. Row, as I understand it, that was offered simply for the purpose of affecting the credibility of Mrs. Row, and not to be used in any manner as affecting the guilt or innocence of the respondent.

"*The Court:* I didn't understand it that way.

"*Mr. Wetmore:* An exception.

"*The Court:* In this case, gentlemen, perhaps there is one thing farther that I ought to say, in view of the statement made by the gentleman for the defendant. All the testimony that has been given in this case has been given for the purpose of finding out just one thing,—just one set of things,—and it has all been introduced with a view of centering upon what actually occurred between the defendant here and this girl. The question that we are trying to find out is whether this defendant actually had sexual intercourse with this young girl, as she claims, and as charged in this information. All the evidence has been adduced, as I say, with a view of finding out the fact with reference to that one proposition. Some of the testimony that has been given is what we term impeaching testimony; in other words, if a person made a statement at one time, and at another time made a different statement; some of the testimony has been adduced to bear upon those propositions; but what we are trying to find out, and the only thing we are trying to find out, here is whether this party actually had connection as claimed by the people in this case."

The jury may have been misled by this portion of the charge. It is not claimed that what Mrs. Row said was in the presence of the respondent. She denied that she stated what the witnesses claimed she did. The testimony was competent, not as affirmative evidence against the respondent, but as impeaching evidence affecting the credibility of Mrs. Row, and the jury should have been so instructed.

It is contended the court erred in not instructing the jury that the burden of proving the respondent was competent to have sexual intercourse was on the people, and in his charge when he said it was for the jury to say whether either of the defenses set up by the respondent had been established. It is not the normal condition for a

man to have paralysis, or for a man of the age of respondent to be incapable of having sexual intercourse, and we do not think the judge erred in relation to that feature of the case.

The conviction is reversed, and new trial ordered.

The other Justices concurred.