*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAKI HOLZER and ROBERT HOLZER,

Plaintiffs-Appellants,

v

ASCENSION PROVIDENCE ROCHESTER d/b/a
CRITTENDON HOSPITAL MEDICAL CENTER
and ASCENSION CRITTENDON HOSPITAL, and
JEFFREY SHULAK, M.D.,

Defendants-Appellees.

UNPUBLISHED
July 10, 2025
11:30 AM

No. 369402
Oakland Circuit Court
LC No. 2019-176257-NH

Before: MALDONADO, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Plaintiffs bring this appeal of right from the trial court's December 27, 2023 order granting summary disposition pursuant to MCR 2.116(C)(10) of Jaki Holzer's medical malpractice claim and Robert Holzer's derivative loss of consortium claim.[1] The trial court found that "although there may be a question of fact regarding the breach of standard of care," the plaintiff in a medical malpractice case must establish the alleged breach was a proximate cause of the alleged injury. It further found that "here there is no causal nexus between the puncture [of the subject saline breast implant and] the plaintiff's alleged pain and therefore plaintiff has failed to produce expert testimony to support that injury." In other words, the trial court found plaintiff failed to establish a genuine issue of material fact as to the element of "proximate causation between the alleged breach and the injury." *Elher v Misra*, 499 Mich 1, 21; 878 NW2d 790 (2016). Because we find that there is a genuine issue of material fact for the jury's resolution on the issue of whether defendant Jeffrey Shulak, M.D.'s alleged breach of the standard of care proximately caused

---

[1] Because the issues on appeal here pertain only to her medical malpractice claim, hereinafter "plaintiff" shall refer to Jaki Holzer.

plaintiff's injuries,[2] including pain resulting from the two implant removal and replacement surgeries, we reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff underwent an elective procedure to have bilateral breast augmentation by way of saline breast implants in 2005. In January 2017, plaintiff complained of right breast pain to her OB/GYN and he ordered a diagnostic mammogram and right breast ultrasound. The February 2017 mammogram showed cysts and a nodule that were "[p]robably benign." Plaintiff was presented with the option to have another mammogram in six months or to have an immediate aspiration / biopsy confirmation, and she chose the latter.

On March 27, 2017, Dr. Jeffrey Shulak performed an ultrasound image guided biopsy of what he believed to be the breast lesions and nodule recommended for intervention. While Dr. Shulak did not have any trouble seeing the lesions and nodule with ultrasound, when he attempted to obtain a biopsy employing a vacuum-assisted Mammotome device,[3] he had difficulty getting the needle properly placed. Plaintiff's expert diagnostic radiologist, Dr. Ronald Washburn, reviewed the ultrasound images from the procedure and said that they show that the Mammotome "needle is all over the place." He also said that, in some of the ultrasound images, the Mammotome needle is nowhere near the nodule that was to be biopsied. Dr. Washburn acknowledged that none of the ultrasound images from the procedure that Dr. Shulak chose to capture depict the biopsy needle within or inside the breast implant.

Another mammogram was performed upon plaintiff immediately following the biopsy procedure. According to Dr. Washburn, it showed evidence of a puncture, rupture or leakage from the right implant that was not present in her earlier February 17, 2017 mammogram. He said "you see what appears to be some collapse of the implant, because there's more linear folds," "infolding or an invagination," and a "lumpy bumpy appearance." Dr. Washburn testified that lucent marks on the imaging from the mammogram that occurred immediately following the surgery more likely than not depicted "dots of air inside the implant" caused by the bore of the outer Mammotome needle when it punctured the surface of the implant.

Dr. Washburn noted plaintiff's testimony that "after the biopsy she had a lot of pain and she was bleeding." In light of this, and the appearance of the right implant in the mammogram immediately following the biopsy procedure, Dr. Washburn testified defendant Dr. Shulak's

---

[2] Plaintiffs' claims against defendant Ascension Providence Rochester Hospital are based upon its vicarious liability for Dr. Shulak's alleged medical negligence.

[3] Dr. Washburn testified that the Mammotome device employed in this procedure is

> a needle within a needle, or a sleeve within a sleeve . . . , and there is a side opening that's maybe a millimeter in length. And what happens is, is the inside sleeve, it's retracted slightly. And when the needle is advanced and it's inside the tissue, you then apply the vacuum to the needle; and in that side port . . . , the vacuum sucks tissue into the bore of the needle. The inside sleeve cuts it off, and you have the tissue inside the needle, and then you take the needle out and there is your [biopsy].

"breach of the standard care would be a puncture with leakage of saline into the tissue. Saline is saltwater. If you put salt in a wound, it's going to hurt." According to Dr. Washburn, this breach "necessarily led to a noticeable and visible deformity of the right breast that could only be remedied with further surgery."

Plaintiff testified that she tasted salty water coming up into her mouth on the day following the biopsy procedure, March 28, 2017. She likewise observed that her right breast looked deflated and incongruous with her other breast at that time. She sought advice and treatment from her plastic surgeon, Dr. Chau, who advised removal and replacement of both of the implants. She told Dr. Chau about the pain she had been experiencing since the biopsy procedure and he indicated it was probably due to the deflated implant being folded or positioned in a manner where it rubs on her bra.

Dr. Chau testified that, when plaintiff presented to him on April 24, 2017, her breasts very obviously appeared lopsided and asymmetrical, "because the right side had deflation of the implant," and he recommended removal and replacement of both the implants. Dr. Chau recommended bilateral removal and replacement due to the age of the original implants. He performed this procedure on August 11, 2017 and testified that the right breast implant "was ruptured and I replaced it." Dr. Chau then had to perform yet another removal and replacement of the right breast implant on August 21, 2017, because the initial replacement was leaking. Dr. Chau acknowledged that there is "severe pain" right after the removal and replacement procedures plaintiff underwent, but that the pain *usually* subsides once the patient recovers.

Plaintiff testified that, following the two removal and replacement procedures, she experienced and has continued to experience constant pain on the right side of her chest (extending through the core of her body to her back) and a limited range of motion, due to which she can no longer take part in activities she previously engaged such as stretching, yoga, landscaping and home improvement projects. She testified that her ongoing pain and limited range of motion is exhausting, embarrassing, causes her anxiety and difficulty sleeping.

Before the initial August 11, 2017 removal and replacement procedure was performed, plaintiff, by way of a letter from her attorney investigating Dr. Shulak's potential medical malpractice, requested that Dr. Chau remove the implants without causing any further damage to them, and that they be preserved and provided to plaintiff following their removal. Dr. Chau complied with this request and the implants were provided to plaintiff in a plastic container labelled with the date they were given to her (and of the procedure); her name, date of birth, Waterford Surgery Center patient record number, and the doctor's name.[4] Additionally, based on the manufacturer and size listed on the removed implants, Dr. Chau confirmed that they are the same type and make of implant that Dr. Chau placed in plaintiff in 2005. Plaintiff testified at her

---

[4] Dr. Chau testified that he did not personally give the implants to plaintiff, but that the Waterford Surgical Center record states "The right breast implant returned to patient per doctor Chau. Left implant returned to patient," and that "[b]asically, the implant was removed and it must have gone to the circulating nurse and they put it into a container and label[led] it and g[a]ve it to [plaintiff]."

deposition and averred in an affidavit that she, in turn, provided the implants to her counsel without altering them in any way.

Plaintiff filed her action alleging medical malpractice against Dr. Shulak and vicarious liability against Ascension Providence Rochester Hospital on August 30, 2019.[5] Among other allegations, the Complaint asserts that Dr. Shulak breached the applicable standard of care in failing to perform the biopsy procedure in a manner so as not to inadvertently lacerate, puncture, or otherwise compromise or damage patient's breast implant and cause it to rupture. It likewise asserts that, as a direct and proximate result of this professional negligence, plaintiff has incurred pain, discomfort, and emotional distress, including due to the two removal and replacement surgical procedures that the saline breast implant rupture necessitated.

Plaintiff's expert diagnostic radiologist, Dr. Washburn, testified that multiple passes of the Mammotome needle while Dr. Shulak tried to properly place the vacuum-assisted side port for purposes of obtaining a biopsy, caused scarring to the surface of the implant, with one of those passes more likely than not catching the substance of the shell and cutting, notching or puncturing the wall of the implant, thereby weakening it and allowing it to rupture with subsequent pressure from muscle activity and movement. Dr. Washburn testified that a photo of the ruptured breast implant that was removed by Dr. Chau and provided to plaintiff (who in turn provided it to her counsel) following the procedure confirmed this causation opinion. It depicts "scars or lacerations or linear lines that traverse the body of the shell, one of which extends right to the point of the rupture." Those scar lines were marked in red, and the site where he believed the Mammotome needle caught the substance of the shell and cut, notched, punctured, or otherwise compromised the implant wall, allowing the rupture, was marked with a green circle in the course of the deposition. Dr. Washburn's causation opinion testimony likewise relied upon ultrasound image 89 of 101, taken during the procedure at the time marker of 2:48:45 p.m. He testified that the image is representative of multiple images taken after the time marker of 2:28 p.m. "that show the Mammotome needle misplaced relative to the nodule" and in close proximity to the surface of the breast implant wall.

Defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(10) contending plaintiff could not demonstrate a question of material fact that Dr. Shulak's alleged breach of the standard of care was a proximate cause of the right implant's rupture or of plaintiff developing scar tissue and contractures. Defendants likewise filed a motion in limine to preclude admission into evidence or reference to the alleged ruptured saline breast implant, most notably contending it cannot be verified and authenticated as the implant Dr. Chau removed and replaced on August 11, 2017, pursuant to MRE 901.

The trial court granted the motion for summary disposition with regard to whether Dr. Shulak's alleged breach of the standard of care and the resultant rupture was a proximate cause of plaintiff's scar tissue and contractures, but denied it in all other respects. The court likewise denied the motion in limine without prejudice in the same order. This Court denied defendants'

---

[5] And her husband likewise asserted a loss of consortium claim.

application for leave to appeal the trial court's order as it pertained to the denial of their initial motion for summary disposition.

Following the deposition of Dr. Chau, defendants again moved for summary disposition of pursuant to MCR 2.116(C)(10), contending plaintiff could demonstrate no genuine issue of material fact that Dr. Shulak's alleged breach of the standard of care was a proximate cause of plaintiff's right implant's rupture and of the pain of which plaintiff thereafter complained. Plaintiff's response contended Dr. Washburn's testimony and the evidence on which it relied created a genuine issue of material fact that, more likely than not, Dr. Shulak's alleged breach of the standard of care in his use of the Mammotome needle during the biopsy procedure was a proximate cause of the right breast implant's rupture and the resultant pain suffered by plaintiff. Additionally, plaintiff's response cited Dr. Washburn's testimony that plaintiff would have experienced pain when salt water from the ruptured implant came in contact with the operative wound. The response also noted that both Drs. Washburn and Chau acknowledged that the ruptured implant would have caused plaintiff pain, and that the rupture necessitated removal and replacement, which procedure would cause severe pain. Further, the replaced right implant leaked, necessitating a second, painful removal and replacement. Defendants' reply contended that because no ultrasound image from the procedure shows the Mammotome needle actually penetrating the implant, and because the post-removal photo of the implant cannot be authenticated, meaning it cannot be properly considered, Dr. Washburn's causation opinion testimony is speculative and should not be considered under MRE 702.

Following oral argument, the trial court took the motion under advisement, and then granted summary disposition at a subsequent hearing. It found that

> although there may be a question of fact regarding the breach of standard of care, plaintiff in a medical malpractice case must establish a breach of an injury [sic], here there is no causal nexus between the puncture [and] the plaintiff's alleged pain and therefore plaintiff has failed to produce expert testimony to support that injury.

The written order entered by the court simply stated that defendants' motion for summary disposition was granted for the reasons stated on the record. While the explanation provided by the court on the record is slightly confusing, we interpret the court's decision consistently with how it has been interpreted by the parties on appeal, which is that, while there was a genuine issue of material fact as to whether Dr. Shulak breached the standard of care, there was no expert testimony establishing that the rupture of the implant and the alleged pain suffered by plaintiff was proximately caused by that breach. Plaintiffs filed a timely claim of appeal following entry of the court's final order.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion

under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (internal quotation marks and citations omitted).]

In reviewing a (C)(10) motion, a court must examine the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden*, 461 Mich at 120; *Downey v Charlevoix County Bd of Road Comm'rs*, 227 Mich App 621, 626; 576 NW2d 712 (1998).

A genuine issue of material fact exists if reasonable minds could differ as to the conclusions to be drawn from the evidence. *West v Gen'l Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, to weigh the evidence, or to determine the facts, and if material evidence conflicts, MCR 2.116(C)(10) summary disposition is inappropriate. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 437; 695 NW2d 84 (2005). "Circumstantial evidence can be evaluated and utilized in regard to determining whether a genuine issue of material fact exists for purposes of summary disposition." *Bergen v Baker*, 264 Mich App 376, 387; 691 NW2d 770 (2004).

## III. ANALYSIS

In a medical malpractice action, the plaintiff "bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995).

"Generally, proximate cause is a factual issue to be decided by the trier of fact." *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002), citing *Dep't of Transp v Christensen*, 229 Mich App 417, 424; 581 NW2d 807 (1998). "However, if there is no issue of material fact, the trial court may decide the issue itself." *Reeves v Kmart Corp*, 229 Mich App 466, 480; 582 NW2d 841 (1998). "[I]t is well-established that the proper standard for proximate causation in a negligence action is that the negligence must be 'a proximate cause' not 'the proximate cause.' " *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 497; 791 NW2d 853 (2010). "[T]here can be more than one proximate cause contributing to an injury." *Id.* at 496-497.

> "Proximate cause" is a legal term of art that incorporates both cause in fact and legal (or "proximate") cause. We defined these elements in *Skinner v Square D Co*:
>
>> The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.

-6-

As a matter of logic, a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries. [*Craig v Oakwood Hosp*, 471 Mich 67, 86-87; 684 NW2d 296 (2004), quoting *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1993).]

Expert testimony is required to establish causation in a medical malpractice action. *Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012), citing *Teal v Prasad*, 283 Mich App 384, 394; 772 NW2d 57 (2009). "While there 'must be facts in evidence to support the opinion testimony of an expert,' circumstantial proof that enables reasonable inferences is sufficient." *Id.*, quoting *Teal*, 283 Mich App at 395, citing *Skinner*, 445 Mich at 164.

Distinguishing between a "reasonable inference" and "impermissible conjecture" in causal proofs, *Skinner* recited the following:

As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence. [*Skinner*, 445 Mich at 164.]

While the plaintiff bears the burden of proof, the plaintiff is not required to produce evidence that positively eliminates every other potential cause. Rather, the plaintiff's evidence is sufficient if it "establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." [*Id.* at 159-160, quoting *Mulholland v DEC Int'l*, 432 Mich 395, 415; 443 NW2d 340 (1989).]

The fact that "the physicians involved in this case are professional observers does not change the rule that their eyewitness testimony may be disbelieved by a jury." *Estate of Taylor v Univ Physician Group*, 329 Mich App 268, 285; 941 NW2d 672 (2019), distinguishing *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278; 602 NW2d 854 (1999).

The credibility of a witness is an appropriate subject for the jury's consideration. Evidence that shows bias or prejudice on the part of a witness is always relevant. Accordingly, "[t]estimony . . . which touches the bias or interest of the witness[ ] is always admissible, and can be shown upon his cross-examination, and, if denied by him, can be proven on rebuttal; the proper foundation being laid for such proof." [*Powell v St John Hosp*, 241 Mich App 64, 72-73; 614 NW2d 666 (2000) (internal citations omitted), quoting *Swift Electric Light Co v Grant*, 90 Mich 469, 475; 51 NW 539 (1892).]

"[T]he failure to keep adequate records may raise issues regarding credibility or burden of persuasion . . . ." *Zdrojewski v Murphy*, 254 Mich App 50, 64; 654 NW2d 721 (2002), citing *Boyd v Wyandotte*, 402 Mich 98, 104-105; 260 NW2d 439 (1977).

### A. PROPERLY CONSIDERED EXPERT TESTIMONY AND OTHER EVIDENCE ESTABLISHES A GENUINE ISSUE OF MATERIAL FACT WHETHER DR. SHULAK'S ALLEGED BREACH OF THE STANDARD OF CARE IN PERFORMING THE BIOPSY PROCEDURE WAS A PROXIMATE CAUSE OF THE IMPLANT'S RUPTURE

The trial court erred when it granted summary disposition to defendants because there are genuine issues of material fact in this case on the issue of whether Dr. Shulak's alleged breach of the standard of care in his performance of the biopsy procedure was a proximate cause of plaintiff's injuries.

As previously noted, the trial court found that plaintiff's expert diagnostic radiologist Dr. Washburn's testimony created a genuine issue of material fact as to whether, more likely than not, Dr. Shulak breached the standard of care in his use of the Mammotome needle in close proximity to plaintiff's right breast implant. As for the cause of the rupture, he testified that Dr. Shulak attempted multiple passes with the Mammotome needle, for purposes of obtaining a biopsy, at least three of which caused scarring to the surface of the implant, with one of those passes catching the substance of the shell and cutting, notching or puncturing the wall of the implant, thereby weakening it and allowing it to rupture with subsequent pressure from muscle activity and movement.

Dr. Washburn testified that a photo of the ruptured breast implant that Dr. Chau subsequently removed and replaced confirmed this causation opinion. It depicts "scars or lacerations or linear lines that traverse the body of the shell, one of which extends right to the point of the rupture."

Defendants contend Dr. Washburn's testimony regarding the photograph of the removed right implant is not properly considered because it and the implant itself are not admissible evidence. We disagree. The trial court has denied without prejudice defendants' motion in limine to exclude this evidence. And while the content or substance of evidence offered in support of or opposition to a motion for summary disposition must be admissible as evidence to be considered, at the summary disposition phase, "that evidence does not have to be in admissible form." MCR 2.116(G)(6); *Latits v Phillips*, 298 Mich App 109, 113; 826 NW2d 190 (2012) (quotation marks and citation omitted).[6] "[A] party does 'not have to lay the foundation for the admission' for

---

[6] E.g., in *Latits*, this Court found officers' personal observations made in police reports were properly considered in support of a summary disposition motion as those officers could have testified at trial to the substance of the material in the reports, and the reports themselves were "plausibly admissible" pursuant to MRE 803(6) and (8). *Id.* at 113-114. Likewise, in *Barnard Mfg Co Inc v Gates Performance Engineering, Inc*, 285 Mich App 362; 775 NW2d 618 (2009), we held that invoices submitted in support of a motion for summary disposition were properly considered by the trial court even though no foundation was laid for the admission of the invoices,

evidence submitted in support of or in opposition to a motion for summary disposition under MCR 2.116(C)(10) 'as long as there [is] a plausible basis for the admission' of the evidence." *Airgas Specialty Prods v Michigan Occupational Safety & Health Admin*, 338 Mich App 482, 516-517; 980 NW2d 530 (2021), quoting *Barnard Mfg*, 285 Mich App at 373. Here, the photograph of the removed ruptured implant is plausibly admissible pursuant to the MRE 901 (authenticating or identifying evidence). As articulated earlier, plaintiff has produced "evidence sufficient to support a finding that the item is what its proponent claims it is," including plaintiff's counsel's letter to Dr. Chau requesting the implants not be further damaged on removal and be provided to plaintiff, Dr. Chau's testimony that this procedure was followed, and plaintiff's testimony and affidavit confirming that she, in turn, provided them to her counsel without altering them in any way. MRE 901(a).

Dr. Washburn's causation opinion testimony likewise relied upon ultrasound image 89 of 101, taken during the procedure at the time marker of 2:48:45 p.m. that depicts the Mammotome needle in close proximity to the surface of the implant. He testified that this image was representative of multiple still images that Dr. Shulak selectively chose to capture after the time marker of 2:28 p.m. "that show the Mammotome needle misplaced relative to the nodule" and in close proximity to the surface of the breast implant wall.

Although none of the ultrasound images of the procedure depict the needle actually inside the shell of the implant, Dr. Washburn testified the postsurgical mammogram more likely than not revealed "dots of air inside the implant" caused by the bore of the outer Mammotome needle when it punctured the surface of the implant, as evidenced by lucent marks on the mammogram imaging. The postsurgical mammogram imaging presents additional evidence of a puncture, rupture or leakage that was not present in her earlier February 17, 2017 mammogram due to the presence of more linear folds, infolding, and "lumpy bumpy appearance."

We find the foregoing evidence, properly viewed in the light most favorable to the non-movant, as well as the reasonable inferences to be drawn therefrom, demonstrate a sufficiently reliable factual basis for Dr. Washburn's opinion that the Dr. Shulak's alleged breach of the standard of care in his use of and technique with the Mammotome needle was a proximate cause of it cutting, puncturing, notching or otherwise compromising the structural integrity of the implant shell. There is a genuine issue of material fact whether this weakened the wall of the implant, allowing it to rupture with subsequent pressure from muscle activity and movement.

Contrary to defendants' assertions, Dr. Washburn's causation opinion is not based upon mere speculation and conjecture. Rather, ample circumstantial proof enables reasonable inferences sufficient to demonstrate a genuine issue of material fact for the factfinder's ultimate resolution. *Kalaj*, 295 Mich App at 429. Defendants' reliance on *Badalamenti v Wm Beaumont Hosp-Troy*, 237 Mich App 278; 602 NW2d 854 (1999), is misplaced. Although the ultrasound images Dr. Shulak chose to capture in the course of the biopsy procedure do not depict the biopsy needle actually within the breast implant, that does not conclusively establish that a puncture did

---

because there was a plausible basis for their admission. With a proper a foundation, the invoices would be admissible as business records pursuant to MCR 803(6), and so the trial court properly considered them. *Id*. at 373-374.

not occur. As previously discussed, the needle could likewise have caught, notched, or otherwise compromised the structural integrity of the implant shell, weakening it and allowing it to rupture with subsequent pressure from muscle activity and movement. Notably, defendants do not suggest an alternative causative mechanism for the implant rupture other than it occurring during the postsurgical mammogram due to its age.

These facts distinguish this case from *Badalamenti* where the evidence of causation rested largely on objective hemodynamic measurements obtained by technical devices contained in the medical record that plaintiff's expert admitted were contradictory to his diagnosis of cardiogenic shock. *Id*. at 286-287. There was also a subjective component of evidence involving a cardiologist's interpretation of echocardiogram results that he observed while in progress. *Id*. at 287. The plaintiff's expert in *Badalamenti* conceded that the echocardiogram did not definitively evidence cardiogenic shock, yet the expert nonetheless reached a diagnosis of cardiogenic shock based on his skepticism and disparagement of the cardiologist's echocardiogram findings. *Id*. at 288.

The basis for finding the present case distinguishable from *Badalamenti* is similar to the basis upon which we distinguished *Badalamenti* in *Estate of Taylor*, 329 Mich App at 280-287. In contrast to *Badalamenti*, the diagnostic evidence in *Estate of Taylor* was purely subjective. The plaintiff's expert relied upon the operative report of the defendant physician, which contained a subjective interpretation of what that defendant saw during a colonoscopy—the report indicated that the defendant believed lesions in the patient's colon were arteriovenous malformations (AVMs), which he biopsied. *Estate of Taylor*, 329 Mich App at 282. The defendant's expert, who conducted a subsequent colonoscopy, relied upon his own subjective opinion as to what he saw during that procedure, and based on what he saw during the second colonoscopy, he did not believe that the defendant physician biopsied AVMs. *Id*. at 271. This Court held that the plaintiff's expert's opinion was admissible, and also noted that the defendant's expert's opinion would be admissible, because they each formed their respective opinions based on facts in the record and drew reasonable inferences from that record. *Id*. at 282. In the present case, Dr. Washburn has likewise formed his opinions based on the facts of record and reasonable inferences drawn therefrom, i.e., he "describes a logical sequence of cause and effect," and his opinions "are not grounded in mere speculation or baseless disdain for a contrary conclusion." *Id*. at 282, 287.

We also note that, in the present case, defendants have failed to preserve the complete ultrasound imaging record. Instead, Dr. Shulak only selectively captured stills therefrom. So while those still images provide some objective evidence of what occurred during the procedure in the present case, defendants also rely upon testimony that Dr. Shulak visualized the positions of the needle and implant at all times (such that, presumably, no puncture or other contact and compromise of the implant wall allowing a subsequent rupture occurred). That self-serving testimony is not comparable to the objective hemodynamic measurements that contradicted the plaintiff's expert's testimony in *Baldamenti*, a fact conceded by Baldamenti's expert in that matter.

Accordingly, the trial court erred when it granted summary disposition to defendants, i.e., the court should have denied the motion for summary disposition because a genuine issue of material fact exists as to whether Dr. Shulak's alleged breach of the standard of care was a proximate cause of plaintiff's implant's rupture and damages arising therefrom.

## B. EXPERT TESTIMONY ESTABLISHES A CAUSAL NEXUS BETWEEN THE IMPLANT'S RUPTURE AND PLAINTIFF'S ALLEGED PAIN

We also disagree with the trial court's conclusion that plaintiff failed to present expert testimony sufficient to demonstrate a genuine issue of material fact as to whether Dr. Shulak's alleged medical negligence was a proximate cause of the pain plaintiff suffered subsequent to that biopsy procedure..

Dr. Washburn acknowledged that the ruptured implant would have caused plaintiff pain, and that the rupture necessitated removal and replacement, which procedure would cause severe pain. Further, here, the replaced right implant leaked, necessitating a second, painful removal and replacement. In addition, Dr. Washburn testified that the plaintiff would have experienced pain when salt water from the ruptured implant contacted the operative wound. Further, while Dr. Chau testified that the severe pain one experiences right after the removal and replacement procedures *usually* subsides once the patient recuperates, this testimony acknowledges that this result is not always the case. Plaintiff testified that, following the two removal and replacement procedures, she experienced and has continued to experience constant pain on the right side of her chest (extending through the core of her body to her back) and limited range of motion, due to which she can no longer take part in activities she previously engaged such as stretching, yoga, landscaping and home improvement projects. She testified that her ongoing pain and limited range of motion is exhausting, embarrassing, causes her anxiety and difficulty sleeping. Plaintiff is certainly permitted to offer testimony as to her own perceptions, particularly where, as here, expert testimony acknowledges that Dr. Shulak's alleged breach of the standard of care can be a proximate cause of the ongoing pain plaintiff says she has experienced. MRE 701 permits lay witnesses to offer opinion testimony rationally based on their perceptions and where such testimony is "helpful to clearly understanding the witness's testimony or to determining a fact in issue." MRE 701; *Airgas Specialty*, 338 Mich App at 516.

We reverse the trial court's December 27, 2023 order granting summary disposition in favor of defendants and remand for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Mark T. Boonstra
/s/ Randy J. Wallace

-11-