IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

## Wytheville.

### BUTLER v. NEWS-LEADER CO.

June 15, 1905.

Absent, Cardwell, J.

1. LIBEL AND SLANDER—*Identification of Plaintiff—Mistaken Identity.*—The publishers of a newspaper are not liable in damages for publishing a libel of a plaintiff where the publication was made without negligence on the part of the publishers, was not made of the plaintiff, but of another person, and was not in its description or identification such as to lead those who knew or knew of the plaintiff to believe that the article was intended to refer to her The fact that the name, occupation and career of the person actually referred to corresponds closely with that of the plaintiff will not render the publishers liable when there was no purpose to refer to the plaintiff, and the publication was not made recklessly but after due enquiry, and a portion of the publication itself excludes the conclusion that it had any reference to the plaintiff.

Error to a judgment of the Circuit Court of the city of Richmond in an action of trespass on the case in libel. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

VOL. CIV—1

The opinion states the case..

*Hill Carter,* for the plaintiff in error.

*Munford, Hunton, Williams & Anderson,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Annie Butler brought an action of trespass on the case in the Circuit Court of the city of Richmond, in which she complains of the News-Leader Company on account of a certain publication concerning her, which she alleges to be false and libelous.

It appears that the plaintiff had been, at one time, a famous rifle shot connected with the Wild West Show carried on by Colonel Cody, commonly known as Buffalo Bill; that she appeared at public exhibitions under the name of Annie Oakley, which the declaration alleges was her maiden name, by which she was commonly known and called; that some time before the publication she had left the employment of Colonel Cody, and been living with her husband, Frank Butler, in New Jersey, and had not been guilty of any of the disgraceful and improper acts, nor was she addicted to the habits, published concerning her; and that the defendant, well knowing the premises, but intending to injure her, had made the publication which is set forth in the declaration as follows:

"Annie Oakley (meaning the plaintiff) at the Bottom of Toboggan (meaning that the plaintiff had sunk to the lowest depths of moral degradation).

"Once Famous Beauty and Crack Shot of the World (meaning the plaintiff) Winds up in Police Court for Petty Theft.

"Chicago, Ill., Aug. 13.—Annie Oakley, daughter-in-law of 'Buffalo Bill' and the most famous rifle shot in the world, lies

to-day in a cell at the Harrison-street station under a Bridewell sentence for stealing the trousers of a negro in order to get money with which to buy cocaine.

"This is the woman for whose spectacular marksmanship King Edward himself once led the applause in the court-yard of Buckingham palace.

"When arrested Saturday on the complaint of Charles Curtis, a negro, she was living at 140 Sherman street. She gave the name of Elizabeth Cody, but it occurred to no one to connect her with Colonel Cody's famous daughter-in-law.

"To-day, however, when brought before Justice Caverly, she admitted her guilt.

" 'I plead guilty, your Honor, but I hope you will have pity upon me,' she begged. 'An uncontrollable appetite for drugs has brought me here. I began the use of it years ago to steady me under the strain of the life I was leading, and now it has lost me everything. Please give me a chance to pull myself together.'

"The striking beauty of the woman whom the crowds at the World's Fair admired is gone. Although she is only 28 years old she looks almost forty. Hers, in fact, is one of the extreme cases which have come up in the Harrison-street police court. To-morrow she will be taken to Bridewell to serve out a sentence of $45 and costs.

" 'A good long stay in the Bridewell will do you good,' said the court.

"The prisoner's husband, Samuel Cody, died in England. Their son, Vivien, is now with Colonel Cody at the latter's ranch on the North Platte. The mother left 'Buffalo Bill' two years ago, and has since been drifting around the country with stray shows."

The plea was "not guilty," and the jury found the following

verdict: "We, the jury, find on the issue joined for the defendant."

During the progress of the trial a number of exceptions were taken, but none of them pertain to matters or questions of any particular interest, and we shall advert but to one instruction and to the evidence bearing upon it.

The court told the jury that if they believed from the evidence "that the article complained of, as published by the defendant company, did not refer to the plaintiff, Mrs. Butler, but to a person who was sometimes known as Annie Oakley, and used this title, stage or fanciful name in order to attract the notice of the public, and was not in its description or identification such as to lead those who knew or knew of the plaintiff to believe that the article was intended to refer to the plaintiff, then they must find for the defendant."

That this was a correct instruction is plain, and if the facts supported it, it cannot be doubted that the verdict should have been for the defendant.

The plaintiff lives in the State of New Jersey. She is a married woman, doubtless of entire respectability. She had been distinguished in her career as a rifle shot, had won much applause and fame both in the United States and abroad, and had retired upon her laurels. Her name was not Annie Oakley, either before or after her marriage. Though the declaration avers that her maiden name was Annie Oakley, she in her testimony states that prior to her marriage her name was Nozee.

There was connected with an exhibition known as the "Wild West Show" a Mrs. S. F. Cody, sometimes known as Miss Lillian Cody.

She began her career at the age of fifteen, married one Sam Cody, and achieved much reputation by her shooting with the rifle and pistol. She appeared also in London, in Paris, in

Germany, and in Italy. The shows to which she belonged, it is to be inferred, were not exactly upon the same plane or level with the higher class represented by Buffalo Bill's "Wild West Show," and it is to be inferred also that Mrs. Cody did not have the same rank in her art as was enjoyed by the plaintiff in error. She had, however, achieved much notoriety, if not fame, and had also affected a stage name, by which doubtless she expected in some degree to confuse herself in the public estimation with the more distinguished artist. Mrs. Cody it seems was known as Any O'Klay, *idem sonans* with Annie Oakley when somewhat carelessly pronounced.

The experience in the Chicago police court actually befell Any O'Klay, and that which appears in the declaration, and which the innuendo asserts was intended for the plaintiff in error, was a stern fact, and hard experience in the life of Mrs. Cody. Her name, her occupation, the company with which she performed and the innocent, or it may be the interested assumption on her part of the stage name resembling in sound that borne by the plaintiff in error, all served to confuse the situation. The article which appeared in the *News-Leader,* it is shown, had theretofore been frequently published in a number of reputable newspapers, among others in the *Evening Star,* of Washington, a newspaper shown to be conservative, careful, and accurate.

The evidence wholly negatives actual malice. It appears, indeed, that neither the editor-in-chief and president of the News-Leader Company, nor others upon the staff of that company connected with the publication in question, had any knowledge of or acquaintance with Mrs. Butler, or Mrs. Cody. They found a report of a public proceeding before the police court in the city of Chicago, with reference to an unfortunate woman who had achieved much notoriety, and which had been pub-

lished in reputable newspapers, and having ascertained those facts the article was reproduced in the city of Richmond. Where newspapers lightly and recklessly publish what is offensive and injurious to a citizen, courts and juries should hold them to a strict accountability; but it is by a reasonable enforcement of the law and not by its harsh and strained construction that the best interests of society are subserved. If an injury had been carelessly, recklessly or wantonly inflicted upon the reputation or feelings of an individual, the wrong doer should answer in damages; but it is the business of a newspaper to give news. The public demands it, and it is a condition of its existence, and we cannot discover from this evidence any ground whatever upon which to rest a claim for damages against the defendant in error.

There was no purpose in the publication in question to refer to the plaintiff in error. It is at most a case of mistaken identity, made not recklessly but after reasonable inquiry, and the trouble arises from a most unusual complication of facts and circumstances with reference to the name, occupation, and career of two individuals.

Upon the face of the publication, however, it is difficult to see how plaintiff in error could have appropriated it to herself. The concluding paragraph is quite sufficient to exclude the conclusion that there was any reference to her intended. It states that "the prisoner's husband, Sam Cody, died in England. Their son Vivien, is now with Colonel Cody, at the latter's ranch on the North Platte. The mother left 'Buffalo Bill' two years ago, and has since been drifting around the country with stray shows." There is not a fact here stated descriptive of the person referred to which applies to plaintiff in error. On the contrary, they do point with reasonable certainty to Mrs. Cody. It appears then that the person who alleges that she was in-

jured by this publication was not known to the defendant, and was not referred to by the defendant. The *innuendo,* therefore, which alone points to the plaintiff in error wholly fails of proof, and the jury were plainly right in applying the facts to the instruction we have quoted, in finding that the defendant company did not refer to the plaintiff, Mrs. Butler, but to a person who was sometimes known as Any O'Klay, and used this title, stage or fanciful name in order to attract the notice of the public, and was not in its description or identification such as to lead those who knew or knew of the plaintiff to believe that the article was intended to refer to her.

Upon the whole case, we are of opinion that there was no error in the judgment of the Circuit Court.

*Affirmed.*