## McCLOY *v.* VAUGHAN.

1. LIBEL AND SLANDER—TRIAL—FAILURE TO INSTRUCT—PLEADING.
   Where the slanderous words charged in plaintiff's declaration were not shown to have been uttered as averred, and the language proved to have been used differed materially from the statements set forth in the declaration, the defendant was entitled to have his requests for instructions to the jury given covering the point that there was no evidence in support of certain of the allegations of plaintiff.

2. SAME—EVIDENCE—WITNESSES—BIAS—INTEREST.
   Plaintiff's attorneys, who went upon the stand as witnesses to meet the testimony of one of defendant's witnesses who claimed to have been offered money to testify in favor of plaintiff, were improperly excused by the trial court from answering interrogatories as to their interest in the action and the amount of their fees, and whether they had the case on a contingent basis: bias or interest of the witness is always a proper subject of inquiry.

3. SAME — EVIDENCE — REPUTATION AS TO WEALTH — FINANCIAL STANDING.
   The actual wealth of the defendant in a slander case is

not competent as the subject of testimony, although his reputed financial standing may be material; and where the court failed to exclude from the consideration of the jury evidence offered tending to show the actual wealth or financial ability of the defendant, in so clear a manner that the jury would understand the instructions, it was reversible error to refuse defendant's requests to the effect that there was no testimony in the case as to his reputed financial standing.

4. SAME—REPETITION OF SLANDER—EVIDENCE.

It was not necessary for plaintiff to prove that a repetition of the slander claimed to have taken place was in the exact words of the original charge: proof of the repetition is intended to bear upon the question of malice in uttering slanderous language. If the statements are substantially similar, calculated to produce the same impression, evidence of such repetition is admissible.

Error to Wayne; Van Zile, J. Submitted January 22, 1915. (Docket No. 91.) Decided March 18, 1915.

Case by Flora McCloy against Jay W. Vaughan for slander. Judgment for plaintiff. Defendant brings error. Reversed.

*Allan H. Frazer*, for appellant.

*McHugh, Gallagher, O'Neil & McGann*, for appellee.

STONE, J. This is an action of slander against the defendant, who had been the landlord of the plaintiff, for damages for certain statements which it is alleged defendant made of and concerning the plaintiff, on the 10th day of August, 1910, about the time the plaintiff vacated the apartments known as the Vaughan apartments, which she had leased from defendant. The evidence is undisputed that the defendant was the owner of an apartment house in the city of Detroit, which he leased, under a chattel mortgage lease, to the plaintiff, beginning on the 1st day of April, 1910, for a period of five years. It appeared that when the plaintiff rented the Vaughan apart-

ments she had purchased different kinds of furniture from five or more furniture dealers in the city of Detroit, in order to fit out the apartments. This furniture had been purchased on the contract installment plan, and only a small amount of cash was paid on account at the time of purchase. The plaintiff continued to occupy this apartment house until the 31st of July, 1910, when she was obliged to vacate owing to an arrearage of rent amounting. to upwards of $1,400. Some of the furniture which had been purchased from the different furniture dealers by said plaintiff remained in the apartment house when she was about to vacate, and a bill of sale was signed and executed by the plaintiff to the defendant, bearing date the 30th day of July, 1910, in and by which she bargained and sold to the defendant "all goods, chattels, furniture and fixtures, including all furniture and furnishings contained in the Vaughan apartments, Nos. 32-34 Watson street, excepting the piano and one dresser belonging to her and now in her possession" at said place. The evidence tended to show that at the time of the execution of this bill of sale the defendant believed that plaintiff owned outright the furniture which she was transferring to him, when, as a matter of fact, there was considerable money still due the furniture dealers on account.

However, counsel for the plaintiff, shortly after the transfer, did inform defendant that there was a very slight sum still due on the furniture, which the plaintiff would pay without delay, and thereby make defendant's title to the furniture clear; but the plaintiff did not pay the balance. After the plaintiff had transferred the furniture in the Vaughan apartments to the defendant, and had vacated the same, she left Detroit to visit relatives in London, Ontario. During the month of August and beginning of September, 1910, the respective collectors for these five furniture

dealers who had sold furniture to the plaintiff on account came to the Vaughan apartments, which were being conducted at that time by the defendant, and made inquiries of him regarding the whereabouts of the plaintiff and certain aforementioned furniture which their respective firms had sold to the plaintiff. In response to these inquiries of plaintiff's creditors, defendant gave certain information as to where the plaintiff had gone; and it is the claim of the defendant that he tried to give them what information he could. The plaintiff's declaration alleges:

"That on, to wit, the 10th day of August, 1910, at the said Vaughan apartments, Nos. 32-34 Watson street, in the city of Detroit, with evil, wicked, wanton, wrongful and malicious intent, in a certain discourse which plaintiff is informed and believes said defendant then and there had of and concerning plaintiff, in the presence and hearing of Guy E. Barnhart, did falsely, evilly, wickedly, wantonly, wrongfully, and maliciously, speak and declare to, and publish of and concerning plaintiff the following false, scandalous, evil, wicked, wrongful, malicious, and defamatory words, to wit (stripped of their innuendoes) : 'Mrs. McCloy has moved out drayloads of furniture. She has disappeared. She collected rents in the Vaughan apartments. She now claims she has not collected them. She got money from the tenants in the building dishonestly, and left the city with her pockets full of money.' "

The plea was the general issue.

Upon the trial the plaintiff introduced as a witness one Guy E. Barnhart, who testified, on direct examination, in substance as follows:

"He said that Mrs. McCloy was not there; she had disappeared, and the probabilities are that the goods were gone with her; that she had taken a good many of the goods out of the apartments. And I wanted to know—he wanted to know—Are the goods all paid for? I said 'No.' He said, 'Well, they ought to be paid for; she had money enough to pay for them.

She collected rents there, and ought to have money enough to pay for them.' I said they were not paid for. He says, 'Well, I don't think the goods are in the apartments.' I asked him if I could go into the apartments and see, and he said no, I could not. He said she had collected rents there and had not paid the rents from the tenants, and had not paid for the furniture, so he understood, or had not paid the rents to him, and he was out some two or three thousand dollars, or something like that, on rents.

"*Q.* Did he say anything as to her financial condition when she left the city?

"*A.* He said she had left with all kinds of money."

On cross-examination the witness further testified:

"I did not go to Mr. Vaughan and ask him first for this lady's address. I went back there and made a second trip and asked him whether he had found her address. I made two trips there. I did not have any personal knowledge that she was not at the Vaughan apartments at the time of my first trip there. When I got there I found that she was not there. I asked Mr. Vaughan what her address was. He said he didn't know. I went back there again and asked him for the address. He did not tell me. I do not recall that he told me she was in Canada. I cannot recall as to where he said she had gone. He said she had disappeared, and I don't think he did say that she had gone to Canada; I don't know. I think I am safe in saying that he used the word 'disappeared,' not that she had gone away. He used some word to that effect. I will positively swear that he used that word. He stated that at the first conversation. That was all the conversation that I remember took place. On the second conversation there was practically only a few words passed between us, if I remember correctly. He said he didn't know any more about her than when I was there before. Those were all the interviews I had with him."

Defendant's counsel requested the court to charge the jury, among other things, as follows:

"(3) The testimony of the witness Guy Barnhart does not substantiate the statements set forth in the

declaration alleged to have been made by the defendant Vaughan to said Barnhart on or about August 5, 1910."

"(6) There is no testimony in the case, as alleged in the declaration, that defendant Vaughan stated to the witness Barnhart, 'Mrs. McCloy has moved out drayloads of furniture.'

"(7) There is no testimony in the case, as alleged in the declaration, that defendant Vaughan stated to the witness Barnhart, 'She now claims that she has not collected them' [rents].

"(8) There is no testimony, as alleged in the declaration, that defendant Vaughan stated to the witness Barnhart, 'She got money from the tenants in the building dishonestly.'"

Philip A. McHugh and Francis T. McGann, two of plaintiff's attorneys, were sworn as witnesses on plaintiff's behalf; they gave testimony tending to contradict one Hazel Von Meer, who had testified as to certain offers of money to her if she would testify against the defendant. On cross-examination each of these witnesses was asked the following question:

"Now, upon what percentage do you bring these cases?"

This being objected to as incompetent, irrelevant, and immaterial, counsel for defendant stated that he sought to show the interest of the witnesses in the case as it might affect their testimony and bear upon their credibility. In the same connection the further question was asked:

"Q. How much is your firm going to get out of the verdict?"

Same objection. Also the question:

"Q. You have got these cases upon halves, haven't you?"

Objections were sustained by the court to all the above questions, and defendant's counsel excepted.

The following occurred upon the cross-examination of the defendant:

"*Q.* Do you own the Vaughan apartments now? (Objected to as incompetent, irrelevant, and immaterial.)

"*The Court:* How is that material?

"*Plaintiff's Attorney:* To show the standing of the man financially as bearing upon the weight his word would have in the community in aggravation of damages.

"*Defendant's Attorney:* I object to it as incompetent, irrelevant, and immaterial.

"*The Court:* The courts have held that you may show the reputation that he has for property. I think I will allow that. (Exception for defendant.) * * *

"*The Court:* What is the fact, do you own the Vaughan apartments?

"*A.* I do not.

"*Q.* When did you sell it? (Objected to as incompetent, irrelevant, and immaterial. Objection overruled. Exception for defendant.)

"*A.* Since the forepart of 1910. * * *

"*Q.* Have you any interest in it now? (Exception for defendant.)

"*A.* No.

"*Q.* Did you own it in August, 1910? (Same objection and exception.)

"*A.* I did not.

"*Q.* Did you have any interest in it then?

"*A.* I did not. (Same objection, ruling, and exception.)

"*Q.* Have you had any interest in this property— if you had no interest in this property, why did you give Mrs. McCloy a lease upon it? (Objected to.)

"*A.* I owned it at that time.

"*Q.* In April, 1910?

"*A.* Yes, sir.

"*Q.* When did you sell it? (Objected to as incompetent, irrelevant, and immaterial.)

"*The Court:* You may have an exception, Mr. Frazer, to all this.

"*A.* Before August 1st.

"*Q.* Do you own any property in your own name now?

"*A.* I do not.

"*Q.* When you sold the Vaughan, for what was it sold, for what amount? (Objected to as incompetent, irrelevant, and immaterial.)

"*A.* I refuse to answer that. (The question was objected to, and after some argument the objection was sustained on the ground that only the reputed financial standing of the defendant was competent.)
\* \* \*

"*Defendant's Attorney:* I move to strike out the witness' testimony.

"*The Court:* All testimony as to details?

"*Defendant's Attorney:* All testimony as to whether he owns it or not.

"*The Court:* Well, I think that is true, too. It is reputed worth.

"*Plaintiff's Attorney:* That is all his testimony?

"*The Court:* All his testimony as to reputed worth seems to be the rule."

The defendant's twenty-third request to charge was as follows:

"There is no testimony in this case as to the reputed financial standing of the defendant, Vaughan, and I charge you that under the testimony, in this case the same cannot be considered."

In its charge to the jury the court, among other things, said:

"Now, I have been asked to charge you whether these certain statements are slanderous. You will remember: 'Mrs. McCloy has moved out drayloads of furniture; she has disappeared; she collected rents in the Vaughan apartments, and she now claims she has not collected them; she got money from the tenants in the building dishonestly, and left the city with her pockets full of money.' Now it cannot be contended that the statement, 'That she moved out drayloads of furniture, or that she has disappeared, or that she has collected rents from the tenants, or that she went away with her pockets full of money,' are in and of themselves slanderous. She may have done this legally and rightfully. These statements cannot alone be considered as slanderous; they are

to be taken, and may be taken, in connection with the other statements that are alleged, and if they are explanatory of those statements, or if they add to them or detract from them, they are to be considered. 'She got moneys from the tenants dishonestly, she collected rents of the tenants, and now claims she has not done so.' These, it seems to me, are the very material statements in this declaration. Charges of dishonest dealing, charges of obtaining money dishonestly in her business, if proven, would be actionable *per se*."

Upon the subject of reputed worth, the trial court charged the jury as follows:

"There is one other matter which I am asked to call your attention to; considerable time has been spent here with reference to the question of the financial standing of the defendant. Now, gentlemen, the reputed financial standing of a defendant may be taken into consideration in considering how great weight his statements might have in the community, when considered by others who may have heard it. Now, that is true, but at the same time you must be told that the financial standing is not to be taken to increase or decrease the damages; that is to say, that simply because a man has money, he is not to be mulcted in damages, or if he has no money it is no less; it is not to be considered in that light; so you are to be very careful in considering that question. As is said by our court, it should be shown to prove the influence his words would have in the community; but the court says a jury must be cautioned against allowing such evidence to carry too much weight or influence, to swell the amount of damages."

The record discloses that the jury found a verdict in favor of the plaintiff for $1,000 for injured feelings, and a judgment was entered accordingly.

This renders it unnecessary for us to consider some of the points urged by defendant's counsel, as there seems to have been no recovery for injury to her business.

The defendant has brought the case here upon writ of error, and while many errors have been assigned,

we shall not find it necessary to specifically consider all of them. The following matters are covered by appropriate assignments of error:

1. In our opinion the defendant was entitled to have the court give his third, sixth, seventh, and eighth requests to charge. We find in the record no testimony in support of these allegations in the declaration. They contained the very sting of the charge in the declaration. Where the record is in such a condition, and in a case where the language proven to have been used is not in substance the same language as charged in the declaration, and where the court's attention has been called to that fact by requests to charge, we think the defendant is entitled to have such requests given.

2. We think it was competent for the defendant to show the interest, if any, which the witnesses, Philip A. McHugh and Francis T. McGann had in the case. They offered themselves as witnesses and testified. The counsel for the plaintiff claim that such testimony was immaterial. We think that they should be estopped from here claiming that their testimony was immaterial and irrelevant. It is well settled in this State that witnesses may be cross-examined as to their interest. The interest or bias of a witness has never been regarded as irrelevant. It goes directly to his credit, and may be considered by the jury in weighing their testimony. *Geary* v. *People*, 22 Mich. 220, and cases there cited; *Swift Electric Light Co.* v. *Grant*, 90 Mich. 469 (51 N. W. 539); *People* v. *Row*, 135 Mich. 505 (98 N. W. 13); *Denman* v. *Johnston*, 85 Mich. 387 (48 N. W. 565).

In the last-cited case, while this court held that the statute authorizes a party to agree with his attorney for compensation, and that such agreement is not a material matter to be inquired into upon the trial, it added:

"If the attorney should present himself as a witness, it might be the subject of inquiry as affecting his credibility on the ground of interest."

In *People* v. *Drolet,* 157 Mich. 90 (121 N. W. 291), this court said:

"The bias or interest of a witness is always a proper subject of inquiry, and, if shown, a proper subject of argument by counsel."

See *Luckhurst* v. *Schroeder,* 183 Mich. 487 (149 N. W. 1009).

3. We are of opinion the court should have given defendant's twenty-third request to charge. And this upon the theory that the court struck out the testimony of the defendant with reference to his actual financial standing. There is some uncertainty as to just what the court did mean when it used the expression: "All his testimony as to reputed worth seems to be the rule." We are in doubt whether the ruling of the court was so clear that the jury understood that this testimony was eliminated from the record. It is not necessary to cite cases to the effect that the actual worth of the defendant was immaterial and irrelevant. Reputed, not actual, financial standing of a defendant, is material. *Brown* v. *Barnes,* 39 Mich. 211 (33 Am. Rep. 375) ; *Farrand* v. *Aldrich,* 85 Mich. 593 (48 N. W. 628) ; *Sanford* v. *Houghton,* 184 Mich. 44 (150 N. W. 334), and cases cited. From the charge of the court we infer that the testimony of defendant as to his actual financial standing was treated as having been stricken out. We have looked in vain through the record to find *any* evidence tending to show the *reputed* worth or standing of the defendant. The record being in that condition, we think the court should have charged the jury as requested by defendant's counsel. It does appear that a number of the material allegations of the publishing of slanderous words were not proven, and the jury should have been

so instructed. The language as testified to was not actionable *per se.*

Complaint is made by appellant that the testimony of the witness Becker, and others, did not show a repetition of the alleged slander. Proof of repetition of slander does not mean a verbatim repetition. The evidence is intended to show malice in repeating charges of a substantially similar nature, and calculated to produce the same impression on the community. *Brown* v. *Barnes, supra.*

We do not find it necessary to discuss any other of the many assignments of error. The questions raised are not likely to arise upon a new trial, in view of what we have said.

For the errors pointed out, the judgment of the court below is reversed, and a new trial granted.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.