# Richmond.

## OTTO C. LIGHTNER v. M. M. OSBORN.

### March 19, 1925.

Argued before Judge Kelly took his seat.

1. LIBEL AND SLANDER—*Qualified Privilege—Statements made in Former Suit—Case at Bar.*—Statements made in a former chancery suit wherein plaintiff in the instant case was defendant, and defendant in the instant case was complainant, were not absolutely privileged, and the evidence of the plaintiff, in the instant case, that defendant, while testifying in the chancery suit, repeated the charge that he had previously made in which he accused plaintiff in the instant case of a shortage in his accounts while in his employ, was admissible for the purpose of showing malice. Defendant's statements while testifying in the chancery suit were privileged only in so far as they were pertinent and material to the issue raised therein.

2. LIBEL AND SLANDER—*Privilege—Qualified Privilege—Judicial Proceedings.*—The privilege of a party or counsel in judicial proceedings is limited. A party or counsel shall not avail himself of his situation to gratify private malice by uttering slanderous expressions, either against a party, witness or third person, which have no relation to the cause or subject-matter of the inquiry.

3. LIBEL AND SLANDER—*Qualified Privilege—Statements made in Another Suit—Case at Bar.*—The instant case was an action for libel and in a former suit in chancery defendant had sought to enjoin plaintiff from publishing a trade journal. The only issue in that suit being whether plaintiff had violated his contract not to enter into competition with defendant, that issue did not warrant a statement of defendant as to an alleged shortage of plaintiff while in his employ or that plaintiff was "robbing our customers."

4. LIBEL AND SLANDER—*Malice—Evidence—Testimony of Witness that Plaintiff Gave Her a Writing to be Inserted Conditionally as an Advertisement.*—In an action for libel the court did not err in permitting a witness to testify that plaintiff gave her, as a representative of a newspaper, a writing to be inserted conditionally as an advertisement· which reflected on defendant's honor, and indicated that he had not been straight in his accounts while in defendant's employ. This evidence was admissible to show malice.

5. LIBEL AND SLANDER—*Evidence—Malice—Charges of Defendant Against Plaintiff.*—In an action for libel it was not error for the court to permit a witness to testify to a conversation which he overheard between defendant and a third party in which defendant said plaintiff was "one of the grandest rascals that ever was and if he wanted a man to do the darkest, dirtiest deed he would recommend" plaintiff. The court instructed the jury to consider this evidence for the purpose of ascertaining the state of mind of the defendant.

6. LIBEL AND SLANDER—*Malice—Testimony of Plaintiff that Statements in a Letter were False.*—In an action for libel it was not error to permit plaintiff to testify that certain statements alleged to have been made in a letter sent by defendant's corporation to another corporation were false.

7. LIBEL AND SLANDER—*Malice—Evidence Admissible.*—As tending to show malice, it is always competent for the plaintiff to prove that the defendant has repeated the slander charged, or has used the same, or similar words, upon other occasions. And where statements other than the one upon which the action is based tend to show actual malice in the utterance of the slander sued on, such statements may also be shown in evidence.

8. LIBEL AND SLANDER—*Malice—Instructions.*—In an action for libel an instruction that if from the evidence the jury believe that the charges contained in the letter were untrue, and if they further believe from the evidence that the defendant has reiterated the charges therein, this is a circumstance tending to show malice on the part of the defendant, was not erroneous.

9. LIBEL AND SLANDER—*Exemplary Damages.*—If express malice on the part of the defendant is shown, exemplary damages are presumed and need not be proved, and it is not improper to instruct the jury that if from the evidence they believe defendant uttered the slander from actual malice, they may find exemplary damages.

10. LIBEL AND SLANDER—*Exemplary Damages—Instructions—Common Law Libel.*—An instruction which clearly applied to a common law libel declared on in the first and second counts of the declaration, to the effect that if the jury believed that the defendant acted in bad faith and with malice in writing the letter in question, and that the charges made were untrue, then the jury must find for the plaintiff, and in assessing his damages they may not only give him damages to compensate for any injury done him, but damages also to punish the defendant for his act and to deter others, was not misleading when read in connection with other instructions given.

11. LIBEL AND SLANDER—*Libelous Per Se—Robbery.*—An accusation of robbery is libelous *per se.*

12. LIBEL AND SLANDER—*Instructions—Exemplary Damages.*—In an action for libel, where the court had properly instructed the jury as to the rights of plaintiff to recover exemplary damages, it was not error

for the court to modify an instruction for defendant limiting the plaintiff to actual damages by adding: "But this instruction must be considered in connection with instructions" in regard to exemplary damages.

13.  LIBEL AND SLANDER—*Publication in the State—Case at Bar.*—In an action for libel it sufficiently appeared from the evidence that one, F., received the letter in question in Texas, read it, and forwarded the same to plaintiff in Virginia, who also read it, and that defendant went to see certain parties personally in Virginia and detailed to them the contents of the letter.

   *Held:*  That this was a circulation and publication of the letter in Virginia, sufficient to support a verdict for plaintiff under either a common law count or a count under section 5781 of the Code of 1919 against insulting words.

Error to a judgment of the Circuit Court of the city of Suffolk, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*D. H. & Walter Leake,* and *Jas. G. Martin & Bro.,* for the plaintiff in error.

*John K. Hutton* and *Tazewell Taylor,* for the defendant in error.

WEST, J., delivered the opinion of the court.

This writ of error is to a judgment for $3,000.00 in favor of N. M. Osborn against Otto C. Lightner, in an action against Otto Lightner and Lightner Publishing Corporation for libel at common law and insulting words under the Virginia statute, Code, 1919, section 5781.

Before the trial the case was dismissed as to the Lightner Publishing Corporation.

The action was based upon a letter written in Washington, D. C., dated Suffolk, Virginia, January 26, 1922, addressed to Lummis & Company, Suffolk, Virginia, signed, The Peanut Promoter, per Otto C. Lightner, a copy of which was forwarded to J. R. Fleming at Weatherford, Texas. Fleming read it and forwarded the same to M. M. Osborn at Suffolk, Virginia. Lightner did not *mail* the original letter to Lummis & Company. He says: "I didn't send that to Lummis & Company because I went to see them personally. * * I decided I was coming to Suffolk, and I would not send that letter to Lummis & Company but would go there myself and say what I had to say;" evidently meaning what he had said in the letter.

The letter accused Osborn of shortage in his accounts, of robbing the customers of Lightner Publishing Corporation, and stated that he had the knack of robbing a man and make him like it, and that he would "sting" those who advertised in the "Peanut Journal."

The Lightner Publishing Corporation, of which Otto C. Lightner was president and controlling stockholder, was the owner and publisher of a certain trade journal known as "The Peanut Promoter," published at Suffolk, Virginia.

On February 2, 1920, the Lightner Publishing Corporation entered into a contract with M. M. Osborn by which he was employed as managing editor of "The Peanut Promoter." The contract, which was in writing, obligated Osborn not to thereafter enter into competition, directly or indirectly, with the Lightner Publishing Corporation, within a period of five years from the date of the agreement, nor accept employment of any competing publisher; and if Osborn failed for any reason to render faithful service or give satisfaction, the corporation could, on thirty days' notice, dispence with his services.

On August 15, 1921, Osborn severed his connection with Lightner Publishing Corporation and was dismissed by Lightner as manager of "The Peanut Promoter." Soon thereafter he started the publication of a similar trade paper, called the "Peanut Journal." While editor of "The Peanut Promoter" he had become acquainted with the "trade" and he used this information to the advantage of the "Peanut Journal."

On January 27, 1922, Lightner Publishing Corporation filed a bill in the Circuit Court of the city of Suffolk praying that Osborn be enjoined from publishing the "Peanut Journal." The defendant answered the bill and upon the pleadings and the evidence taken *ore tenus* the court entered a decree denying the relief prayed for and dismissing the bill.

The declaration in the instant case contains three counts. The first two set forth as a libel the letter which was written and published by Lightner and the Lightner Publishing Corporation. The third count is under the statute for insulting words and sets forth the letter mentioned in the first and second counts. The defendant pleaded the general issue and that the alleged publication was privileged, was not malicious and did not damage the plaintiff.

Upon the trial the defendant took sundry exceptions to the rulings of the court as to the admissibility of certain evidence, to the granting, refusing and amendment of certain instructions, and the action of the court in refusing to set aside the verdict of the jury and in entering judgment thereon.

It is conceded that the publication declared on was in a matter in which the defendant had an interest and therefore qualifiedly privileged, and that the plaintiff could only recover by showing malice in fact.

[1-3] It is contended that what occurred in the

chancery suit and the statements made in the trial of
that case were absolutely privileged, and that the evi-
dence of the plaintiff, in the instant case, that Lightner,
while testifying in the chancery suit, repeated the
charge he had previously made as to plaintiff's short-
age, was inadmissible for the purpose of showing
malice.

Lightner's statements while testifying in the chan-
cery suit were privileged only in so far as they were
pertinent and material to the issue raised therein.

In Newell on Slander and Libel (2d ed.) 424, para-
graph 27, this is said: "And the same doctrine is
generally held in the American courts, with the qual-
ification as to parties, counsel and witnesses, that their
statements made in the course of an action must be
*pertinent* and *material* to the case. The qualification
of the English rule is adopted in order that the pro-
tection given to individuals in the interest of an effi-
cient administration of justice may not be abused as a
cloak from beneath which to gratify private malice."
(Italics ours.)

The bill in the chancery suit was a pure bill for an in-
junction, the only issue being whether Osborn had
violated his contract not to enter into competition,
directly or indirectly, with Lightner Publishing Cor-
poration within a period of five years, and not to accept
employment with any competitor or competing pub-
lisher. The issue involved did not warrant the state-
ment as to Osborn's "shortage" or that he while in the
defendant's employ was "robbing our customers." As
said by Newell, at page 425: "The privilege is limited
and that limit is this: That a party or counsel shall
not avail himself of his situation to gratify private
malice by uttering slanderous expressions, either against
a party, witness or third person, which have no relation
to the cause or subject matter of the inquiry."

[4] It is alleged that the court erred in permitting Miss Daisy Nurney to testify that Lightner gave her, as a representative of a Norfolk newspaper, a writing to be inserted conditionally as an advertisement, which reflected on Osborn's honor, and indicated that he had not been straight in his accounts.

[5] It is contended that the court erred in allowing W. J. Norfleet to testify to a conversation which he overheard between Lightner and a third party, in which Lightner said Osborn was "one of the grandest rascals that ever was and if he wanted a man to do the darkest, dirtiest deed he would recommend Osborn." The court instructed the jury to consider this evidence only for the purpose of ascertaining the state of mind of the defendant.

[6] It is further contended that the court erred in permitting Osborn to testify that certain statements alleged to have been made in a letter sent by Lightner Publishing Corporation to the Lambert Machine Company were false.

[7] As tending to show malice, it is always competent for the plaintiff to prove that the defendant has repeated the slander charged, or has used the same, or similar words, upon other occasions. And where statements other than the one upon which the action is based tend to show actual malice in the utterance of the slander sued on, such statements may also be shown in evidence.

In *Williams Printing Co.* v. *Saunders*, 113 Va. 156, 73 S. E. 472, Ann. Cas. 1913E, 693, this court said: "In actions of slander or libel, other slanderous words, spoken or written of the plaintiff, whether before or after those laid in the declaration, may be given in evidence to show malice on the part of the defendant, when that is an issue in the case."

In the case of *Lincoln* v. *Chrisman*, 10 Leigh (37 Va.) 338, we find this: "However questionable the practice may seem, to permit the introduction of evidence of words spoken at a different time, in order to prove malice in speaking those charged in the declaration, it seems now too firmly established to be shaken."

In *Colbert* v. *Journal Publishing Co.*, 19 N. M. 156, 142 Pac. 146, it is held that "Repetitions of the alleged defamatory matter, or other defamatory publications of a similar character, are admissible to show actual or express malice on the part of the defendant."

In *Larrabee* v. *Minnesota Tribune Co.*, 36 Minn. 141, 30 N. W. 462, the court says: "To show actual malice, other libelous publications by the defendant, containing substantially the same imputation against the plaintiff as the article sued on, are admissible.

Mr. Newell, in his admirable work on Slander and Libel (2d ed.), page 337, states the law thus: "Anything defendant has ever said or done with reference to the plaintiff may be urged as evidence of malice. It is very difficult to say what possible evidence is inadmissible on this issue. The plaintiff has to show what was in the defendant's mind at the time of publication, and of that no doubt the defendant's acts and words on that occasion are the best evidence. But if plaintiff can prove that at any other time, before or after, defendant had any ill feeling against him, that is some evidence that the ill feeling existed also at the date of publication; therefore, all defendant's acts and deeds that point to the existence of any such ill feeling at any date are evidence admissible for what they are worth."

In 25 Cyc., at page 497, we find this: "It is well settled, however, that repetition of the alleged defamatory matter or other defamatory publications of similar import are admissible to show actual or express malice on the part of defendant."

We find no prejudicial error in the admission of testimony.

Upon the trial the court gave the following instructions:

"Instruction No. 2-P.—The court instructs the jury that if from the evidence they believe that the charges contained in the letter were untrue, and if they further believe from the evidence that the defendant, Lightner, has reiterated the charges therein, this is a circumstance tending to show malice on the part of the defendant.

"Instruction No. 4-P.—The court instructs the jury that they may take into consideration the language of the letter itself to determine the intent with which it was written.

"Instruction No. 5-P.—The court instructs the jury that though they may believe from the evidence that the letter referred to in the declaration has done plaintiff no permanent injury, this is no defense for the defendant, in case the jury believe he acted with malice, and that the allegation was untrue. The injury resulting from a defamatory publication done in malice, although temporary, is such as entitles the party defamed to damages, not only for any temporary injury, but also as extra compensation as damages to deter the defendant and other parties from a repetition of the offense.

"Instruction No. 6-P.—The court instructs the jury that if they believe from the evidence that the defendant acted in bad faith and with malice in writing the letter in question, and that the charges made were untrue, then the jury must find for the plaintiff, and in assessing his damages they may not only give him damages to compensate for any injury done him, but damages also to punish the defendant for his act and to deter others.

"Instruction No. 7-P.—The court instructs the jury that a privileged communication means nothing more than that the occasion of making it rebuts the prima facie inference of malice arising from the publication of matter prejudicial to the character of the plaintiff, and throws upon him the onus of proving malice in fact, but not proving it by extrinsic evidence only, he has still the right to require that the alleged libel itself shall be submitted to the jury that they may judge whether there is evidence of malice on the face of it.

"1. The court instructs the jury that the publication in question was made in a matter in which defendant had an interest, and was what the law calls privileged, so that in order to be actionable the publication would have to be both false and made with actual malice, which malice is not presumed and would have to be proved by plaintiff.

"2. The court instructs the jury that even if they believe from the evidence that the language in the letter complained of was not true, nevertheless if they believe from the evidence that such letter was communicated to Mr. Fleming without actual malice of defendants against the plaintiff, they should find for the defendant.

"4. The court instructs the jury that if they believe the language complained of in the letter in question was substantially true they should find for the defendant.

"5. The court instructs the jury that even if they find for the plaintiff, the only actual damages he would be entitled to recover would be such damages, if any, as they believe from the evidence was suffered by the plaintiff by the letter complained of being read by Mr. Fleming.    But this instruction must be considered in connection with instructions 5-P and 6-P.

Each of the instructions marked 2-P, 4-P, 5-P, 6-P and 7-P, respectively, was granted at the request of the plaintiff. The other instructions, marked 1, 2, 4, 5, and 6, respectively, were granted at the request of the defendant, O. C. Lightner, except that the words, "but this instruction must be considered in connection with instructions 5-P and 6-P" (which words appear at the bottom of instruction 5), were added by the court over the objection of the defendant.

The 7th and 8th assignments of error are to the action of the court in giving instructions 2-P, 4-P, 5-P and 7-P, respectively, and in modifying instruction No. 5 and giving the same as modified, as above stated.

[8] Instruction 2-P is a correct statement of the law, and is supported by the authorities already cited. See *Colbert* v. *Journal Publishing Co.*, 19 N. M. 156, 142 Pac. 146; 25 Cyc. 497, *supra*.

[9] We find no error in instruction 5-P. It is settled law that if express malice on the part of the defendant is shown, exemplary damages are presumed and need not be proved. In *Harman* v. *Cundiff*, 82 Va. 239, this court held it not improper to instruct the jury that if, from the evidence, they believe defendant uttered the slander from actual malice, they may find exemplary damages. See also 25 Cyc. and cases cited. Besides, in the instant case, the jury were instructed that the plaintiff could not recover unless they believed the defendant acted with malice.

[10, 11] Instruction 6-P clearly applies to the common law libel declared on in the first and second counts of the declaration, and when read in connection with the other instructions given in the case it cannot be said that the jury were misled by it. Defendant accused the plaintiff of robbery, according to the general meaning of that term, and the accusation was libelous *per se*.

[12] Since instructions 5-P and 6-P contain correct statements of the law, it was not error for the court to modify instruction 5 in the manner complained of.

The remaining assignment of error is that the verdict is contrary to the evidence and without evidence to support it.

The contention of the petitioner is that the evidence showed publication of the alleged libelous matter only in Texas and not in Virginia; that, therefore, there could not lawfully be any recovery in this case under the statute, and that as the third count in the declaration was based on the statute, the verdict, which was general in form, may have been found under this count, and should, for that reason, have been set aside.

It is not claimed by the defendant that the evidence would not support a verdict for libel at common law under the first two counts of the declaration.

[13] It sufficiently appears from the evidence that J. R. Fleming received the letter in question at Weatherford, Texas, read it and forwarded the same to M. M. Osborn at Suffolk, Virginia, who also read it; and that Lightner went to see Lummis & Company personally at Suffolk, and detailed to them the contents of this letter. This was a circulation and publication of the letter in Virginia, sufficient to support a verdict under either count of the declaration. In such cases a general verdict is always sustained.

We find no reason to disturb the judgment complained of.

*Affirmed.*