# Richmond.

## JORDAN B. POWELL v. AL YOUNG.

September 27, 1928.

Reheard December 6, 1928.

The opinion states the case.

*John N. Sebrell* and *J. Edward Moyler*, for the plaintiff in error.

*Wm. G. Maupin*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

The defendant (plaintiff in error) lived in the town of Franklin, and had conducted a jewelry store there under the style of "Powell Bros., Jewelers."

Soon after the Christmas of 1925, he determined to discontinue the sale of jewelry and to confine himself to the sale of general merchandise, and advertised that fact. To emphasize this change in the character of his business the name "Powell's Style Bazaar" was given to the new enterprise. The plaintiff (defendant in error) had been the manager of a motion picture house in that town. His time was not entirely taken up, and he conceived the idea of forming a connection with some jewelry firm to sell jewelry in Franklin on commission. He spoke to Powell about this, and Powell gave cordial approval. Thus fortified he took the matter up with Jacob Bennett, Incorporated, an established jewelry house in Norfolk, and was appointed its local representative in Franklin to sell its wares in that town on commission. The venture was successful and he sold more than $7,000.00 worth of jewelry in 1926.

In the meantime Powell changed his mind. Matters drifted on and he and Young soon became active competitors. Their relation, cordial in the beginning, rapidly changed and became so strained that he soon ceased to speak to Young at all, and on August 6, 1926, inserted in the Tidewater News, a weekly newspaper

published in Franklin, of good general circulation, the following advertisement:

## "DID IT EVER OCCUR TO YOU

that the man who rings your doorbell to sell his wares has the same spiel for everybody? His spiel is given him by the house he represents and carefully memorized so that all of his prospects will fall for the same dope.

## "POWELL BROTHERS
## "HAVE BEEN IN THE JEWELRY BUSINESS IN
## "FRANKLIN FOR 15 YEARS.

"We have never come into the installment game to any great extent although we have hundreds of satisfied customers to whom we have sold on time and saved them money. We contend that any city installment jewelry concern carrying a reputable line of jewelry can sell its wares at home instead of employing local shark talent to sell them in nearby towns on a commission basis. The commission is the big idea with the local sharks who represent the city jewelers. Did you ever have them tell you that 'by paying $1.00 down and $1.00 per week you would soon have it paid for and never miss your money?'

"In buying from Powell Brothers YOU SAVE YOURSELF THIS SHARK'S COMMISSION; YOU GET BETTER PRICES ON THE ARTICLE ITSELF, YOU GET BETTER PROTECTION ON YOUR PURCHASES.

"No doubt you would find it easier to explain to us if payments were not convenient when due—we are at home where the article is sold; we know you and you know us.

"IF YOU NEED A WATCH OR A DIAMOND RING OR ANY OTHER THING IN JEWELRY, WE WILL GLADLY TALK WITH YOU ABOUT THE WAY IT IS MOST CONVENIENT FOR YOU TO PAY.

"POWELL'S STYLE BAZAAR

"Successors to

"POWELL BROTHERS, JEWELERS.

"FRANKLIN, VIRGINIA."

On the same day a placard in these words was conspicuously displayed in the window of defendant's store:

"The city jewelers with their LOCAL SHARK representative, selling their wares on commission, have a smile and 'spiel' that is memorized for every prospect.

"We can sell you that diamond, watch or any other article for less money and give you better protection.

"We know you and you know us."

This action is based on this advertisement. The declaration contains two counts, the first being for slander (libel) at common law, and the second for insulting words under the statute. There is no plea of justification, but one of not guilty.

In due course plaintiff recovered a verdict of $1,000.00 which was confirmed by the court. To this act and to its rulings on evidence during the trial, and to certain instructions given and refused, exceptions were taken, and on them the case is now before us.

For convenience we will first consider the motion to set aside the verdict as contrary to the law and the evidence.

It is to be remembered that we have a jury's verdict approved by the trial court, and so upon familiar

principles we consider this assignment practically as on a demurrer to the evidence.

Defendant claims that this advertisement was part of a long drawn out crusade in the town of Franklin against salesmen of various wares, including jewelry, who went from door to door. So pestiferous had this become that the Tidewater News had taken it up editorially, and the town itself had enacted an ordinance in an effort to check the nuisance.

██ Impersonal comments on the unwisdom of purchasing from itinerant vendors are not objectionable, and if the jury had believed that this publication was of that character then the defendant was not guilty, and they would have so found, not because it was a qualified privilege, but because this right to comment is a primary right guaranteed to everyone, and might have been exercised at any time and in any place. Qualified privilege as that term is used in the law of libel carries with it the suggestion that the publication is objectionable in certain circumstances, and would be actionable but for the peculiar conditions under which it was made.

██ This issue was presented under proper instructions, and the jury by its verdict was of opinion that it was not well taken.

In instruction No. 1, given for the plaintiff, they were told that if they believed from the evidence that this publication in fact was intended to refer to the plaintiff, they should give to it the same force that they would have given had he been there named. This also was a matter to be determined from the evidence.

Robert Britton testified that he saw the advertisement and understood that it referred to the plaintiff. Another witness, Davidson, did not see it, but heard it generally discussed. He thought it was intended for

Young since there was no other man in the town to whom it could apply, and states that this view was entertained by the people generally.

It is true that the Tidewater News, as early as March 1925, had commented upon house-to-house canvassers. Its last article on that subject headed "Pass up the Peddler" bears date October 16, 1925. These editorials were impersonal and entirely unobjectionable, but it is to be noted that the defendant's advertisement was published nearly nine months after the last newspaper comment. It was published after the defendant had advised the plaintiff to go into this commission business, and it was not published until the shoe of competition had begun to pinch.

Now it is also true that "shark" is not always a particularly opprobrious epithet, and indeed at times it might be taken as a compliment. To speak of a student as a shark for work would be resented by no one, but it does, at times, have sinister significance. Davidson said that he thought it meant "crook," and the dictionaries support him. However, this matter has been settled by the verdict upon proper instructions, and is sustained by competent testimony. It is final unless there were improper instructions given or unless the court erred in passing upon the admissibility of evidence.

In the petition for a writ of error the first and major assignment deals with instructions 2 and 6 given for the plaintiff. These instructions are:

"2. The court instructs the jury that if they believe from the evidence that the publication complained of was published by the defendant of and concerning the plaintiff, and that the words used were commonly understood as imputing dishonesty, then it imputed moral delinquency to the plaintiff, and it is not a privileged

communication. From the publication of the charges therein contained the law infers that they were falsely and maliciously made, and throws upon the defendant the burden of proof by reliable and credible evidence that the allegations were true, and also that the publication was made in good faith and without malice."

"6. The court instructs the jury that under the pleadings and proof in this case, there is no plea filed nor proof offered by the defendant that the charges sued on are true, as to the application of the term 'shark' to the plaintiff, and the jury must therefore consider that such term, as applied to the plaintiff, is untrue; that the said advertisement was not privileged and its publication was an unlawful act on the part of the defendant, if the term 'local shark' therein was intended by the defendant to be understood as referring to the plaintiff, and generally was so understood, and was also generally understood as imputing dishonesty for which unlawful act the defendant must answer in damages to an amount to be determined upon principles laid down in the other instructions given the jury."

In their consideration Rule 22 of Rules of Court is to be remembered where it is said that objections to instructions shall state with reasonable certainty the ground of such objection. These grounds appear from the record to have been:

"To the giving of said instructions and to each of them the defendant objected, on the ground that they did not correctly state the law as applicable to the facts of this case, were misleading and inappropriate upon the evidence, and that instruction one was otherwise erroneous in stating that it was sufficient if those who know the plaintiff understood the publication as referring to him; that instruction 2 was further errone-

ous in that it declared the publication to be not privileged; that instruction 8 is further erroneous in leaving to the jury to determine what was warranted by law without telling them what the law was; that instruction 12 is erroneous on the further ground that it took from the jury the question as to whether the language of the publication was libelous, and that instruction 13, in addition to the grounds already assigned, was further erroneous in that it referred to the specific amount of damages which the jury might give."

When we examine this bill of exceptions we find that the only issue raised is that instruction No. 2 was "erroneous in that it declared the publication to be not privileged." To say that an instruction is misleading and inappropriate upon the evidence, and does not correctly state the law applicable thereto, is too general to be of any assistance to the trial court and is a plain violation of the letter and spirit of Rule 22.

The truth of the charge is not pleaded and is not relied upon. With this in mind the instruction in substance tells the jury that if they believe from the evidence that the Powell advertisement charged Young, a competitor in business, with being a dishonest merchant, then that publication was not privileged.

It is not easy to argue self-evident propositions. That view of the case which defendant contends for was, as we have seen, submitted to the jury under proper instructions. Had it been adopted a verdict of not guilty would have followed as a matter of course. We have also seen that in such circumstances the advertisement would have been not merely privileged, but one which any merchant might have published as a primary right.

In *Williams Printing Company v. Saunders*, 113 Va.

156-161, 73 S. E. 472, Ann. Cas. 1913E, 693, this instruction was given:

"A publication in such a periodical, made either of a public officer or of a candidate seeking an office from the votes of the people, which falsely imputes to him crime or moral delinquency, is not a privileged publication, but from such a publication the law imputes malice to both the author and the printer thereof, and the person defamed is entitled to recover damages for any injury he may suffer thereby to his business, his feelings, and his reputation, unless the language itself be satisfactorily explained, and, if actual malice or a reckless disregard of the rights of the plaintiff is shown, the jury may award, in addition thereto, punitive or exemplary damages as hereinafter defined."

■ *Mutatis mutandis* it is entirely in point. The court said that a publication charging a candidate for office with moral delinquency is not privileged, and for a stronger reason a publication not founded upon facts charging a competitor in business with moral delinquency is not.

■ "Defamatory words falsely spoken of a party which prejudiced such party in his or her profession or trade are slanderous *per se*." Burks Pl. & Prac. (2nd ed.) section 145; *Pollard* v. *Lyon*, 91 U. S. 225, 23 L. Ed. 308.

There is no merit in this assignment.

■ Instruction No. 1 given at the instance of the plaintiff was objected to as "erroneous in stating that it was sufficient if those who know the plaintiff understood the publication as referring to him." That instruction told the jury that before they could find a verdict for the plaintiff, they must believe that the "advertisement complained of was intended to refer to the plaintiff, and would be so understood by persons

who knew him, from reading it," and that the burden of showing this was upon the plaintiff.

In *Butler* v. *News-Leader Company*, 104 Va. 1, 51 S. E. 213, the jury was told that it was necessary that the publication should be such as to lead one who knew the plaintiff to believe that it was intended for the plaintiff, and this is exactly what the jury was told here. The words vary but their significance does not.

■■ Objection is also made to plaintiff's instruction No. 3 as being erroneous in this particular: "In telling the jury that certain circumstances enumerated therein 'tended to show malice on the part of the defendant.' " There was no error in this, but if it was erroneous, no objection was made when it was offered.

For a like reason objection to instruction No. 7 cannot be considered.

■ Instruction No. 8 is objected to in that it left "to the jury to determine what was warranted by law without telling them what the law was." This instruction is:

"The court instructs the jury that every man must be supposed to intend the natural and probable consequences of his acts, and it is not necessary to render the acts complained of malicious that the defendant should have been actuated by a feeling of hatred or ill will toward the plaintiff, or that he entertained or pursued any bad purpose or design. But if, in the publication complained of, the jury believe that the defendant wilfully inflicted a wrong on the plaintiff, which was not warranted by the law, then the act of such publication was malicious in law and in itself injurious."

It was approved in *Williams Printing Company* v. *Saunders, supra.* See instruction No. 4 there given.

Instruction No. 12 was approved by this court in *Lightner* v. *Osborne*, 142 Va. 19-27, 127 S. E. 314.

Instruction No. 13 was approved by this court in *Williams Printing Company* v. *Saunders, supra.* See instruction No. 7 there given.

It is also said that instruction B tendered on behalf of the defendant, and rejected by the court, should have.,been given. That instruction is:

"The court instructs the jury that the publication complained of in this case was privileged and unless they shall believe from the evidence that it was published with actual malice they should find for the defendant."

▇ It was too narrow. It told the jury that in order for the plaintiff to recover it was necessary that the defendant should have entertained "actual malice towards the plaintiff." Of course this is not law. If a man publishes slanderous statements which mortify and injure another, he is liable for the consequences. It would be curious if a merchant might publish of a competitor that he was dishonest and unreliable, and then come into court and say: "I had no facts which warranted such a statement; I entertain no feeling of ill will, and am therefore not liable." A statement of this° proposition is sufficient. Actual malice in the sense that ill will must exist is not necessary even when the occasion is one of qualified privilege. *Aylor* v. *Gibbs*, 143 Va. 644, 129 S. E. 696.

▇ ▇ It is also said that the court was in error in permitting the witness Saunders to testify as to the placard. When this witness testified Davidson and others had already testified as to it without objection, and had been cross examined.

In *Whitten* v. *McClelland*, 137 Va. 726, 120 S. E. 146, it is said:

"It is well settled and obviously a sound general

rule that an objection to evidence cannot be availed of by a party who has, at some other time during the trial, voluntarily elicited the same evidence, or has permitted it to be brought out by his adversary without objection." See also *Scholz* v. *Standard, etc., Co.*, 145 Va. 694, 134 S. E. 728.

It was but cumulative and only served to corroborate evidence unobjected to and already in the record.

██ Moreover it is competent to show a repetition of the offense when malice is in issue (*Williams Printing Company* v. *Saunders, supra*), and it is not necessary that the libel be repeated verbatim. (*McCloy* v. *Vaughan*), 185 Mich. 189, 151 N. W. 667.

██ In the declaration malice was charged and it was denied by the plea of not guilty. It was therefore in issue, and this evidence was not rendered inadmissible by the fact that the court was of opinion that malice had already been established. Indeed it would have been competent if there had been a formal admission in open court. In a personal injury suit the defendant might come in and admit negligence, but such an admission would not preclude the plaintiff from. tendering evidence to show the facts. The only purpose in view when malice is shown is to increase the amount of the verdict. The plaintiff has small interest in showing it as an academic question.

██ It is also said that this witness should not have been permitted to testify that in his judgment this placard was intended to apply to Young. Evidence of a like character had already been given without objection. *Whitten* v. *McClelland, supra.* Moreover it was competent for Saunders to say that there was no man in Franklin except the plaintiff who fitted this placard's description. For him then to go forward

and say that in his judgment it was intended for Young was but a corollary. The jury would almost of necessity have assumed that he thought it was intended to apply to Young, if there was no one else to whom it could apply, and so this objection, if it were not met by the doctrine of *Whitten* v. *McClelland, supra,* would still be addressed to a matter of minor importance.

■ This placard was but a republication of the advertisement and as such competent evidence, not a verbatim publication, it is true, but that was not necessary. It was published on the same day that the advertisement was, and one must be guileless indeed not to have understood that the same "shark" was referred to in each instance.

In conclusion it is said that Allen, the bookkeeper for Jacob Bennett, Incorporated, of Norfolk, should not have been permitted to testify as to the character of the jewlery handled by that corporation or as to the number of its accounts.

■ ■ The libel declared upon was against the local representative of a "city installment jewelry concern carrying a reputable line of jewelry." Plaintiff had the right to show that he represented such a concern. The libel also stated that the concern employs persons to sell its wares, "in nearby towns on a commission basis." It was proper to prove that this description fitted plaintiff's employer, Jacob Bennett, Incorporated Allen's evidence showed that this company was located in Norfolk, carried a standard line of jewelry, and sold it on a commission basis. As showing the character of the business of Bennett, Incorporated, there can be no objection to evidence which showed its extent, and that it had local representatives in many towns, including Young in the town of Franklin, who sold for it on a commission basis. There was already evidence in the record to show that the plaintiff was the only local man in Franklin so employed.

Much may be said in support of the claim that the jury took a more serious view of the offense than was warranted by the facts, but there is evidence to show that the plaintiff was actually injured in his business and that he was mortified and humiliated by the charge. All of this was pre-eminently for the jury, and we are without power to disregard their conclusions.

For reasons stated we are of opinion that there is no error in the record. The judgment appealed from should be affirmed, and it is so ordered.

*Judgment affirmed.*

## ON REHEARING, *December 6, 1928.*

PER CURIAM:

The argument in this case is the result of a rehearing heretofore granted, and presents for the court's consideration the question of whether or not the learned trial court erred in refusing to give an instruction which affirmatively told the jury that the alleged libel as set out in the declaration was privileged, or was published of and concerning a privileged occasion.

██ ██ This seems to be strictly a common law action for libel, and the offending publication is only actionable, if at all, because of the inferences which the defendant in error undertook to draw from the language employed, by the rather free use of *inuendoes*. *Inuendoes* prove nothing, they are the conclusions of the pleader. If the jury should believe, under proper instructions, that the inferences drawn by Young from the publications complained of, are justified, this court will not at this time undertake to say a

verdict cannot be supported.· It seems quite clear from a careful reading of the publication, that no libel *per se* is charged therein.

This court is of the opinion that the occasion was clearly privileged, and placed upon the plaintiff in the trial court the positive obligation of showing actual malice on the part of Powell. We think also that he was entitled to have the jury so instructed in unequivocal language.

The burden thus placed upon the plaintiff in an action for libel can be overcome by any legitimate evidence sufficient to convince reasonable minds that malice existed at the time of the publication of the supposed libel, and was the motive prompting same.

When this has been done, that which was qualifiedly privileged, ceases to enjoy that exemption and the offender is answerable in damages under the principles of law, recognized in a long list of cases decided by the courts of last resort in this and other States.

The cases of *Ramsay* v. *Harrison*, 119 Va. 682, 89 S. E. 977; *Vaughan* v. *Lytton*, 126 Va. 671, 101 S. E. 865; *Lightner* v. *Osborne*, 142 Va. 19, 127 S. E. 314; and *Aylor* v. *Gibbs*, 143 Va. 644, 129 S. E. 696, are some of the recent decisions dealing with the general subject, and we think are controlling of the questions that may be expected to arise on a second trial of this case.

The publication under consideration seem to us to have been primarily intended as a criticism of "the city installment jewelry concern" attempting to sell its wares in nearby towns, the method of employing "local shark talent" being incidental to the major movement but whether this is so or not, we think the evidence of the quantity of business done by Jacob Bennett, of Norfolk, the number of accounts on his books; and the

territory covered by his activities was irrelevant and should not have been admitted.

Certainly Jacob Bennett's business was not in issue in this action, the question was, whether Powell in a *bona fide* attempt to protect his own business and the public from what he considered an unhealthy situation, and from unethical business methods, was actuated by an honest purpose directed towards the preservation of his own interests and of that of the public, or went beyond the exigencies of the occasion: and pursued a course out of proportion to the occasion and the attendant circumstances and whether or not in so doing he was referring to Al Young.

██ ██ Where the occasion is privileged as in this case, the jury is to decide whether it was used *bona fide* or not. If it was so used, no recovery can be had. *Strode* v. *Clements*, 90 Va. 553, 19 S. E. 177.

The instructions given and approved by the Supreme Court of Appeals in the cases of *Ramsay* v. *Harrison* and *Vaughan* v. *Lytton, supra,* seem to us to furnish a most satisfactory guide for any future trial that may be had as a result of this opinion.

For the reasons stated the judgment of the court will be set aside and a new trial awarded, to be submitted upon principles not inconsistent with the views here expressed.

*Reversed and remanded.*